OPINION
{¶ 1} Defendants-appellants Andrew R. Rutherford and Tracy L. Rutherford appeal from an order of the Montgomery County Court of Common Pleas granting a motion to stay litigation pending arbitration, filed by plaintiff-appellee Household Realty Corporation (HRC). The Rutherfords first contend that the trial court erred in granting HRC's motion to stay pending arbitration, because HRC waived its right to arbitration by filing this lawsuit. Because the Rutherfords failed to establish that HRC's allegedly inconsistent act of filing this lawsuit prejudiced them, they have not met their burden of proof to show that HRC waived its right to arbitrate. Therefore, we conclude that the trial court did not abuse its discretion in concluding that HRC did not waive its right to arbitrate.
 {¶ 2} The Rutherfords next contend that the trial court erred in granting HRC's motion to stay pending arbitration, because the Arbitration Rider lacks mutuality. The Rutherfords contend that the Arbitration Rider extends to HRC the right to institute litigation under some circumstances, while limiting the Rutherfords to arbitration. Pursuant to the Arbitration Rider, the Rutherfords are allowed to institute litigation in certain circumstances. Therefore, we conclude that the trial court did not abuse its discretion in deciding that the Arbitration Rider did not lack mutuality.
 {¶ 3} The Rutherfords next contend that the trial court erred in granting HRC's motion to stay pending arbitration, because an arbitrator does not have the authority to address tender obligations under the Truth in Lending Act. Claims arising under the Truth in Lending Act are arbitrable. Substantive challenges to a contract are not removed from an arbitrator's purview unless there is an independent challenge to the agreement to the arbitration clause, itself. The Rutherfords do not dispute that they agreed to the Arbitration Rider; therefore, we conclude that the Rutherfords' challenge to contract based on the Truth in Lending Act are properly subject to arbitration. We conclude that the Rutherfords' contention that the trial court erred in granting HRC's motion to stay pending arbitration, because an arbitrator does not have the authority to address tender obligations under the Truth in Lending Act is without merit.
 {¶ 4} The Rutherfords also contend that the rescission of the loans to them also rescinds the Arbitration Rider, and that R.C.2711.03(A) mandates a hearing to determine whether the dispute should be referred to arbitration when the borrower exercises his or her right to rescission. The Rutherfords have merely asserted a right to rescission; the loan agreements have not yet been rescinded. An arbitrator must find whether the conditions for rescission have been met. Even if the conditions for rescission of the loan agreements are found, the doctrine of severability precludes removal from the scope of arbitration of a claim of rescission of the entire contract where there is no dispute as to the legitimacy of the arbitration clause. Because the Rutherfords do not dispute that they agreed to the Arbitration Rider, their claim of rescission of the loan agreements is subject to arbitration.
 {¶ 5} We also reject the Rutherfords' contention that a hearing is mandated in this case, pursuant to R.C. 2711.03. The Arbitration Rider, by its terms, is governed by the Federal Arbitration Act, 9 U.S.C. § 1-16, (FAA), in particular section 3 of the FAA — not Ohio statutory law. We conclude that a hearing is not mandated by section 3 of the FAA and that the procedural requirements of section 4 of the FAA, similar to R.C. 2711.03, are not applicable to this case.
 {¶ 6} We conclude that the trial court did not abuse its discretion in granting HRC's motion to stay litigation proceedings pending arbitration.
 {¶ 7} Accordingly, the order of the trial court is affirmed.
 I {¶ 8} In June, 2000, Andrew R. Rutherford and Tracy L. Rutherford (the Rutherfords) executed a Loan Repayment and Security Agreement, in the amount of $115,578.94, and a Home Equity Credit Line Revolving Loan Agreement, in the amount of $26,000, with Household Realty Corporation (HRC). The two loan agreements gave HRC a security interest in the Rutherfords' residence. The Rutherfords separately executed an Arbitration Rider with HRC, which was incorporated into the two loan agreements by reference.
 {¶ 9} The Arbitration Rider provided, in pertinent part, that "[b]y signing this Arbitration Rider, you agreed that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, and third-party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed."
 {¶ 10} The Arbitration Rider also provided, in pertinent part, that "[n]o provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents. The use of the courts shall not constitute a waiver of the right of any party, including the plaintiff, to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions contained in this Arbitration Rider."
 {¶ 11} The signature page of the Arbitration Rider stated, in bold print, that "The parties acknowledge that they had a right to litigate claims through a court before a judge or jury, but will not have that right if either party elects arbitration. The parties hereby knowingly and voluntarily waive their rights to litigate such claims in a court before a judge or jury upon election of arbitration by either party." The Arbitration Rider was signed by Andrew and Tracy Rutherford.
 {¶ 12} In November, 2002, HRC filed a complaint for money, foreclosure, and other equitable relief against the Rutherfords, alleging that the Rutherfords defaulted in the payment of their loan. In their answer, the Rutherfords counterclaimed, alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601, et seq., and seeking rescission of the two loan agreements pursuant to15 U.S.C. § 1635. Thereafter, HRC moved the court to stay litigation pending arbitration of the counterclaims.
 {¶ 13} The magistrate granted HRC's motion to stay litigation pending arbitration, finding that HRC met its burden of proof for an order to stay litigation, pursuant to Stout v. J.D. Byrider
(2000), 228 F.3d 709. The magistrate also found HRC had not waived its right to arbitration, because the Rutherfords failed to show that they were prejudiced by HRC's actions. The magistrate found that the Arbitration Rider did not lack mutuality, because it allowed either HRC or the Rutherfords to utilize the judicial or non-judicial process in bringing claims to protect their interest in the property. In response to the Rutherfords' argument that the Arbitration Rider was rescinded through rescission of the loan agreements, the magistrate found that the Rutherfords may not avoid arbitration by asserting their right to rescind the underlying loan agreement and that the validity of the rescission is an issue that must be decided by an arbitrator. The magistrate found the Arbitration Rider valid and enforceable, stayed the litigation, and ordered that the counterclaims be resolved by an arbitrator.
 {¶ 14} The Rutherfords filed objections to the magistrate's decision. The trial court overruled the Rutherfords' objections and adopted the magistrate's decision staying the proceedings pending the outcome of arbitration. From this order, the Rutherfords appeal.
 II {¶ 15} The Rutherfords' sole assignment of error is as follows:
 {¶ 16} "The trial court erred in granting appellee's motion to stay proceedings pending arbitration."
 {¶ 17} In determining the propriety of a trial court's decision on a motion to stay proceedings pending arbitration, the standard of review is whether the decision amounts to an abuse of discretion. Lindsey v. Sinclair Broadcasting Group, Inc.,
Montgomery App. No. 19903, 2003-Ohio-6898, at ¶ 19, citation omitted. A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, citations omitted.
 {¶ 18} In this case, there is a clear agreement to arbitration. The Rutherfords signed the Arbitration Rider, underneath the following statement:
 {¶ 19} "The parties acknowledge that they had a right tolitigate claims through a court before a judge or jury, but willnot have that right if either party elects arbitration. Theparties hereby knowingly and voluntarily waive their rights tolitigate such claims in a court before a judge or jury uponelection of arbitration by either party." (Bold capitals in original.)
 {¶ 20} The Arbitration Rider provides that by signing it, either party can request that any claim, dispute, or controversy, including initial claims or counterclaims, arising from the loan agreements, including the validity or enforceability of the Arbitration Rider, shall be resolved by binding arbitration. Pursuant to the Arbitration Rider, HRC requested that the Rutherfords' counterclaims, arising from the loan agreements, be resolved by binding arbitration. The Rutherfords do not dispute their agreement to arbitrate. Rather, the Rutherfords contend that the trial court erred in granting HRC's motion to stay proceedings pending arbitration, because HRC waived its right to arbitration by filing this lawsuit.
 {¶ 21} The Arbitration Rider provides, in pertinent part, that "[n]o provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents.The use of the courts shall not constitute a waiver of the rightof any party, including the plaintiff, to submit any Claim toarbitration nor render inapplicable the compulsory arbitrationprovisions contained in this Arbitration Rider." (Emphasis added.)
 {¶ 22} The Rutherfords do not dispute that under this provision in the Arbitration Rider, HRC did not waive its right to arbitrate in instituting this lawsuit seeking foreclosure. Rather, the Rutherfords contend that HRC waived its right to arbitrate when it filed this lawsuit to recover money damages. In support of their contention, the Rutherfords rely on Checksmartv. Morgan, Cuyahoga App. No. 80856, 2003-Ohio-163. In determining whether the right to arbitrate was waived, the Eighth District Court of Appeals examined first, whether the defending party knew of the right to arbitrate, and next, whether the defending party acted inconsistently with that right. Id. at ¶ 24. The Eighth District Court of Appeals held that the right to arbitration was waived by the filing of a lawsuit, because the institution of a lawsuit is an action inconsistent with the right to arbitrate. Id. at ¶ 22.
 {¶ 23} The Arbitration Rider provides that it shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16. "The provisions of that act constitute `a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" Moses H. Cone Memorial Hospital v. MercuryConstruction Corp. (1983), 460 U.S. 1, 24, 103 S.Ct. 927, 941,74 L.Ed.2d 765, 785. Likewise, the policy of Ohio law is to favor and encourage arbitration to settle disputes. ABM Farms, Inc. v.Woods (1998), 81 Ohio St.3d 498, 500, 692 N.E.2d 574.
 {¶ 24} "`The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Cone, supra, at 24-25,103 S.Ct. at 941, 74 L.Ed.2d at 785. Accordingly, agreements to arbitrate are to be rigorously enforced. Shearson/American Express, Inc., v.McMahon (1987), 482 U.S. 220, 226, 107 S.Ct. 2332, 2337,96 L.Ed.2d 185, 193.
 {¶ 25} "`A party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate.' Walker v. J.C. Bradford Co.
(C.A. 5, 1991), 938 F.2d 575, 577. To demonstrate waiver, a party must show that its opponent knew of an existing right to arbitrate, that its opponent acted inconsistently with that right, and that those inconsistent acts prejudiced the party alleging waiver. Stifel, Nicolaus Co., Inc. v. Freeman
(C.A. 8, 1991), 924 F.2d 157, 158." Supervalu Holdings, Inc. v.Schear's Food Centers, Inc., Montgomery App. No. 16881, 1998 WL 425505, at *4.
 {¶ 26} The Rutherfords argue that HRC knew of its right to arbitration and that it acted inconsistently with that right, but they fail to address how those inconsistent acts prejudiced them. Although the Rutherfords rely on the Eighth District Court of Appeal's decision in Checksmart, which only requires proof of these two elements, this court has held in Supervalu that the inconsistent acts must also prejudice the adverse party in order for waiver of arbitration to be effected. We stated that "`prejudice is the touchstone for determining whether the right to arbitration has been waived.'" Supervalu at *4, citation omitted. "`Whether inconsistent actions constitute prejudice is determined on a case-by-case basis. * * * Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, * * * or litigation of substantial issues going to the merits, * * *. Additionally, a party's failure to assert a prelitigation demand for arbitration may contribute to a finding of prejudice because the other party has no notice of intent to arbitrate. * * * Delay in seeking to compel arbitration does not itself constitute prejudice. * * *'
 {¶ 27} "`Also relevant to the waiver inquiry is `the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the [trial] court proceedings; the extent of its non-merits motion practice; its assent to the [trial] court's pretrial orders; and the extent to which both parties have engaged in discovery.'" Id., internal citations omitted.
 {¶ 28} Assuming, for purposes of analysis, that the Rutherfords met their burden of proof to establish that HRC's actions were inconsistent with its right to arbitrate, the Rutherfords have failed to show that those inconsistent acts prejudiced them. The Rutherfords fail to address this element, and the record does not indicate any prejudice to the Rutherfords. The record shows that neither party had initiated discovery, and the trial date was set for October, 2003, approximately five months after the motion to stay litigation pending arbitration was filed. In addition, HRC filed its motion for stay pending arbitration four months after the complaint was filed and two months after the Rutherfords filed an answer and counterclaim. We conclude that there is nothing in the record to establish that the Rutherfords were prejudiced.
 {¶ 29} Because the Rutherfords failed to establish that alleged inconsistent acts by HRC prejudiced them, they have not met their burden of proof to establish that HRC waived its right to arbitrate. In addition, the Arbitration Rider expressly provides that "the use of the courts shall not constitute a waiver of the right of any party, including the plaintiff [HRC], to submit any Claim to arbitration. . . ." Therefore, we conclude that the trial court did not abuse its discretion in concluding that HRC did not waive its right to arbitrate.
 {¶ 30} The Rutherfords next contend that the trial court erred in granting HRC's motion to stay pending arbitration, because the Arbitration Rider lacks mutuality. The Rutherfords contend that the Arbitration Rider lacks mutuality, because it extends to HRC the right to institute litigation, while limiting the Rutherfords to arbitration.
 {¶ 31} Again, the Arbitration Rider provides, in pertinent part, that "[n]o provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party
during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents." (Emphasis added.)
 {¶ 32} The Arbitration Rider specifically extends to both HRC and the Rutherfords the right to institute litigation in certain, limited circumstances. In Davis v. MBNA Consumer Services, Inc.
(July 19, 2002), Montgomery County C.P. No. 01-CV-6766, the trial court held that an identical provision in an Arbitration Rider did not lack mutuality. We agree with the trial court's observation in Davis that "as the provision is available for foreclosure by the Defendant, it is also available to the Plaintiff for use in an action to quiet title." Id. The Rutherfords are allowed to institute litigation, and are not limited to arbitration, in certain, limited circumstances. Therefore, we conclude that the trial court did not abuse its discretion in deciding that the Arbitration Rider does not lack mutuality.
 {¶ 33} The Rutherfords argue that the Davis trial court was incorrect in its conclusion and that the language employed in the provision in this case is not the language employed in Davis.
We agree with the conclusion reached in Davis and find that the language employed in this case is not materially different from the language employed in Davis.
 {¶ 34} The Rutherfords next contend that the trial court erred in granting HRC's motion to stay proceedings pending arbitration, because an arbitrator does not have the authority to address tender obligations under the Truth in Lending Act (TILA).
 {¶ 35} In their counterclaim, the Rutherfords claim that they are entitled to rescind both loan agreements, because HRC failed to comply with certain applicable provisions in the TILA. In its reply to the counterclaim, HRC claimed, as an affirmative defense, that the Rutherfords' claim for rescission is barred by their inability to tender back the loan proceeds. The Rutherfords contend that once they exercised their right to rescind the loans, HRC became subject to certain affirmative obligations under TILA. The Rutherfords contend that upon rescission, a mortgage becomes automatically void and a lender cannot foreclose upon it. The Rutherfords contend that the borrowers are not obligated to tender back loan proceeds until after the mortgage is released of record. Thus, the Rutherfords contend that HRC's affirmative defense — that the Rutherfords' claim for rescission is barred by their inability to tender back the loan proceeds — would be a modification of the rescission procedures, and under TILA, only a court can modify the rescission procedures, not an arbitrator.
 {¶ 36} We first note that a court's "duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights." Stout v. J.D. Byrider (C.A. 6, 2000), 228 F.3d 709,715, certiorari denied (2001), 531 U.S. 1148, 121 S.Ct. 1088,148 L.Ed.2d 963, citing Shearson/American Exp., Inc. v. McMahon
(1987), 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (RICO);Dorsey v. H.C.P. Sales, Inc. (N.D.Ill. 1999), 46 F. Supp.2d 804,808 n. 5 (TILA); Goodwin v. Ford Motor Credit Co. (M.D.Ala. 1997), 970 F. Supp. 1007 (TILA). Claims arising under TILA have been found to be arbitrable. See id. The Rutherfords also concede that, in general, TILA claims can be arbitrated.
 {¶ 37} Here, the Rutherfords' argument is based on the premise that the loan agreements have been rescinded, and that once the loan agreements are rescinded, the mortgage becomes automatically void and they are not obligated to tender back loan proceeds until after the mortgage is released of record, pursuant to TILA. Therefore, the Rutherfords argue that HRC's affirmative defense — that the Rutherfords' claim for rescission is barred by their inability to tender back the loan proceeds — would be a modification of the rescission procedures under TILA, which can only be conducted by a court, not an arbitrator. However, the Rutherfords' assertion of the right to rescission does not have the automatic effect of voiding the loan agreements.
 {¶ 38} "1635(b) [TILA] states that, `[w]hen an obligor exercises his right to rescind,' the creditor's security interest `becomes void.' The natural reading of this language is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. If a lender disputes a borrower's purported right to rescind, the designated decision maker — here an arbitrator — must decide whether the conditions for rescission have been met. Until such decision is made, the [borrowers] have only advanced a claim seeking rescission. The agreement remains in force, and is subject to the general rule that `a federal court must not remove from the arbitrator consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself.' If the TILA language on which the [borrowers] rely created an exception to this well-established rule of law, a borrower could rescind a transaction without any statutory justification simply by alleging that the statutory requirements for rescission had been met. That is an untenable proposition." Large v. Conseco FinanceServicing Corp. (C.A. 1, 2002), 292 F.3d 49, 54-55.
 {¶ 39} In this case, HRC does not acknowledge that the right of rescission is available, and the appropriate decision maker has not yet determined that the loan agreements should be rescinded. HRC disputes the Rutherfords' purported right to rescind, and therefore, an arbitrator must decide whether the conditions for rescission have been met. See id. Until this decision is reached, the Rutherfords have only advanced a claim seeking rescission. "[T]he agreement remains in force, and is subject to the general rule that a court must not remove from the arbitrator consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself." Id. The Rutherfords do not challenge the efficacy of their agreement to the Arbitration Rider, specifically, but instead challenge the efficacy of the loan agreements, generally. Thus, an arbitrator must consider the Rutherfords' challenge to the loan agreements.
 {¶ 40} We conclude that the Rutherfords' contention that the trial court erred in granting HRC's motion to stay proceedings pending arbitration, upon the ground that an arbitrator does not have the authority to address tender obligations under TILA, is without merit.
 {¶ 41} The Rutherfords also contend that the rescission of the loans also rescinds the Arbitration Rider, and that R.C.2711.03(A) mandates a hearing to determine whether the dispute should be referred to arbitration when the borrower exercises his or her right to rescission.
 {¶ 42} We have already concluded that the Rutherfords have merely asserted a right to rescission, and that the loan agreements have not yet been rescinded. An arbitrator must find whether the conditions for rescission have been met. Even if the conditions for rescission of the loan agreements are found, under the doctrine of severability, an "arbitration agreement is treated as an independent contract that does not necessarily fail if the remainder of the contract is found invalid." ChampaignLandmark, Inc. v. Prince, Champaign App. Nos. 97 CA 28, 97 CA 29, 97 CA 30, 1998 WL 735914, at * 5, citing Prima Paint Corp.v. Flood Conklin Mfg. Co. (1967), 388 U.S. 395, 402-404,87 S.Ct. 1801, 18 L.Ed.2d 1270; Wilharm v. M.J. Constr. Co.
(1997), 118 Ohio App.3d 531, 534, 693 N.E.2d 830. "The doctrine is applicable where there is no direct challenge to the arbitration clause itself, * * * and a court utilizes it in such circumstances by severing the clause, as a separate agreement to arbitrate, from the contract and compelling arbitration on all underlying claims challenging the contract. The basis for the underlying challenge, * * * `does not change applicability of the severability doctrine.' In effect the doctrine serves to save an arbitration clause from being rescinded when a claimant attempts to rescind an entire contract.
 {¶ 43} "Accordingly, a court is not permitted to consider a claim for rescission of an entire contract where there is no dispute as to the legitimacy of the arbitration clause. In such situations, `the court must compel arbitration.' Thus, the general rule of law is that `in the face of a valid arbitration clause, questions regarding the validity of the entire contract must be decided in arbitration.'" Wilharm,118 Ohio App.3d at 534, internal citations omitted.
 {¶ 44} Again, the Rutherfords do not challenge the efficacy of the Arbitration Rider, specifically, but instead challenge the efficacy of the loan agreements, in general. In this situation, the validity of the loan agreements must be decided in arbitration under the doctrine of severability, because a court is not permitted to consider a claim of rescission of an entire contract where there is no separate dispute as to the efficacy of the arbitration clause. Id. In addition, the Arbitration Rider provides that it survives repayment of the loan agreements and/or termination of the loan agreements. Thus, even if the loan agreements were to be rescinded, the Rutherfords' obligation to arbitrate would survive the termination of the loan agreements, pursuant to the Arbitration Rider.
 {¶ 45} The Rutherfords rely solely on Neubauer v. HouseholdFinance Corp., Cuyahoga App. No. 81451, 2002 WL 31771287. InNeubauer, the court did not rely on the doctrine of severability in reaching its decision. This court has already concluded that the doctrine of severability is applicable in this situation. See Champaign, 1998 WL 735914, at *5, citing PrimaPaint, 388 U.S. at 402-404; Wilharm, 118 Ohio App.3d at 534.
 {¶ 46} Based on the foregoing, we conclude that the Rutherfords' contention that their purported rescission of the loan agreements has effectively rescinded the Arbitration Rider is without merit.
 {¶ 47} The Rutherfords argue that R.C. 2711.03(A) mandates a hearing to determine whether the dispute should be referred to arbitration when the borrower exercises his or her right to rescission.
 {¶ 48} HRC argues that the Arbitration Rider is governed by the FAA, in particular section 3 of the FAA, and not Ohio statutory law. We agree.
 {¶ 49} The Arbitration Rider expressly provides that the Arbitration Rider shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16. Section 3 of the FAA provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.
 {¶ 50} In this case, section 3 of the FAA is the applicable section, not section 4. Section 4 of the FAA, similar to R.C.2711.03, is not the applicable section, because it applies to compel arbitration, while section 3 of the FAA, similar to R.C.2711.02, applies to motions to stay proceedings pending arbitration. See Maestle v. Best Buy Co., 100 Ohio St.3d 330,2003-Ohio-6465, 800 N.E.2d 7, at ¶ 18.
 {¶ 51} In Maestle, the Ohio Supreme Court held that "a trial court considering whether to grant a motion to stay proceedings pending arbitration filed under R.C. 2711.02 need not hold a hearing pursuant to R.C. 2711.03 when the motion is not based on R.C. 2711.03. While it is within a trial court's discretion to hold a hearing when considering whether a R.C.2711.02 stay is warranted, that statute does not on its face require a hearing, and it is not appropriate to read an implicit requirement into the statute.
 {¶ 52} "The law is the same under the federal statute. Federal courts have found that the procedural requirements of Section 4 of the Federal Arbitration Act (a statute very similar to R.C. 2711.03) do not apply to a motion to stay litigation brought under Section 3 of the Federal Arbitration Act (which closely resembles R.C. 2711.02)." Id. at ¶¶ 19-20.
 {¶ 53} Pursuant to Maestle, we conclude that a hearing is not mandated by section 3 of the FAA and that the procedural requirements of section 4 of the FAA, similar to R.C. 2711.03, are not applicable in this case. Although the FAA is the applicable law in this case, we conclude that even under R.C.2711.02, which applies to motions to stay proceedings pending arbitration, a hearing would not be mandated pursuant toMaestle.
 {¶ 54} The Rutherfords rely solely on Miller v. HouseholdRealty Corp., Cuyahoga App. No. 81968, 2003-Ohio-3359. The court in Miller recognized that this exact issue was pending before the Ohio Supreme Court in Maestle, which has since been decided. See id. at ¶ 32.
 {¶ 55} We conclude that the Rutherfords' contention that a hearing is mandated in this case pursuant to R.C. 2711.03 is without merit.
 {¶ 56} We conclude that the trial court did not abuse its discretion in granting HRC's motion to stay proceedings pending arbitration.
 {¶ 57} The Rutherfords' sole assignment of error is overruled.
 III {¶ 58} The Rutherfords' sole assignment of error having been overruled, the order of the trial court staying further proceedings pending arbitration is affirmed.
Brogan and Young, JJ., concur.