OPINION
{¶ 1} Robert J. Beggs, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court denied his motion to stay further proceedings pending mediation and arbitration and his motion to dismiss.
 {¶ 2} John R. Davis Trust 8/12/05 (individually "Davis trust") and Patricia J. Shorr (individually "Shorr"), plaintiffs-appellees (collectively "appellees"), along with appellant, were involved in investing in real estate together for approximately ten years, and the *Page 2 
transaction here was similar to past transactions. In the present case, appellant located a property, Coventry East Apartments ("apartments"), and signed a purchase contract. The parties then formed Coventry East Investors, LLC ("CEI"), and signed an operating agreement, which contained mandatory mediation and arbitration clauses as part of a dispute resolution provision. As an attorney and certified public accountant, appellant, at times, performed legal and accounting activities for CEI.
 {¶ 3} In September 2005, CEI formally acquired the apartments. Spectrum Capital, LLC ("Spectrum"), which was co-owned by appellees, provided various analyses and handled various financial issues related to the transaction. Spectrum received payments for services associated with the acquisition. Further, CEI hired Fleetwood Management Company ("Fleetwood") to manage the apartments. Fleetwood was wholly owned by appellant.
 {¶ 4} In June 2007, appellees allegedly discovered property taxes were delinquent on several of the apartment complexes it owned with appellant, and appellees requested various financial documents from appellant regarding the limited liability companies that held the apartments. Unsatisfied with appellant's actions, appellees filed the present action against appellant on August 20, 2007, seeking injunctive relief, declaratory judgment, and damages. Appellees believed appellant had engaged in various fraudulent activities related to the apartments. On November 29, 2007, appellant filed a motion to stay the action pending mediation and arbitration pursuant to the terms of the operating agreement. The trial court did not rule on the motion to stay, and further proceedings, investigations, and depositions ensued. On February 28, 2008, appellant filed a motion to dismiss the case, again based upon the mediation and arbitration *Page 3 
clauses in the operating agreement. On May 13, 2008, the trial court issued a judgment denying appellant's motions, finding that the arbitration clause in the operating agreement was unconscionable. Appellant appeals, asserting the following assignment of error:
 The Trial Court Erred as a Matter of Law by Denying Appellant Robert J. Beggs' Motion to Stay Further Proceedings Pending Mediation and Arbitration and by Denying Appellant, Robert J. Beggs' Motion to Dismiss.
 {¶ 5} In his sole assignment of error, appellant argues that the trial court erred when it denied his motion to stay further proceedings pending mediation and arbitration and when it denied his motion to dismiss. We must first address appellees' assertion that the trial court's denial of appellant's motion to dismiss was not a final, appealable order, and, thus, this court does not have jurisdiction to address it. An appellate court has jurisdiction to review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals. Section 3(B)(2), Article IV, of the Ohio Constitution; see, also, R.C. 2505.03.
 {¶ 6} R.C. 2711.01 et seq. provides for either direct enforcement of arbitration agreements through an order to compel arbitration, pursuant to R.C. 2711.03, or indirect enforcement through an order staying proceedings under R.C. 2711.02. Dismissal of a claim allegedly subject to arbitration is not a remedy authorized by R.C. 2711.01 et seq. Notwithstanding, it is clear that the denial of a motion to dismiss is not a final, appealable order. See Lonigro v. Lonigro (1989),55 Ohio App.3d 30, 31; Taylor v. Norfolk Southern Ry. Co., Cuyahoga App. No. 85699, 2005-Ohio-4576, at ¶ 20; citing Celebrezze v. Netzley (1990),51 Ohio St.3d 89; Lakewood v. Pfeifer (1992), 83 Ohio App.3d 47; Hill v.Home Roam Pools, Ashtabula App. No. 2003-A-0097, 2003-Ohio-5862, at ¶ 8; and Shane v. *Page 4 Tracy (Aug. 24, 2000), Cuyahoga App. No. 77025. With regard to a denial of a motion to dismiss specifically relating to an arbitration provision, it has been likewise held that a denial of a motion to dismiss based upon an arbitration provision is not a final, appealable order. See Taylor, supra, at ¶ 12, citing Rock v. Merrill Lynch, Pierce,Fenner Smith, Inc. (1992), 79 Ohio App.3d 126, and Ponyicki v.Monterey Homes, Inc. (May 19, 1994), Cuyahoga App. No. 65549. See, also,Frank Novak Sons, Inc. v. Greater Cleveland Growth Assn. (Aug. 1, 1996), Cuyahoga App. No. 69778 (a denial of a motion to dismiss arbitration is not a final, appealable order, as the error can always be assigned on appeal at the end of trial); Shopsmith WoodworkingPromotions, Inc. v. Am. Woodworking Academy, Inc. (Oct. 18, 1995), Montgomery App. No. 15268 (in appeal of two separate motions — one to stay and one to dismiss — there is no jurisdiction to consider the trial court's denial of motion to dismiss based upon arbitration clause, as it did not affect a substantial right, pursuant to R.C. 2505.02, because the court's order did not preclude future relief via an appeal of the arbitration issue from the court's denial of a stay). Therefore, we find that we do not have jurisdiction to consider appellant's appeal of the trial court's denial of his motion to dismiss, as it is not a final, appealable order.
 {¶ 7} As for the trial court's denial of his motion to stay proceedings pending mediation and arbitration, R.C. 2711.02(C) specifically provides that an order that grants or denies a stay of a trial of any action pending arbitration is a final order and may be reviewed, affirmed, modified, or reversed on appeal. Appellate courts generally review a trial court's decision regarding a motion to stay proceedings pending arbitration under an abuse of discretion standard.Khoury v. Denney Motors Assoc, Inc., Franklin App. No. 06AP-1024,2007-Ohio-5791, at ¶ 7, citing Peters v. Columbus Steel CastingsCo., *Page 5 
Franklin App. No. 05AP-308, 2006-Ohio-382, at ¶ 10. However, the de novo standard of review is proper when the appeal presents a question of law. Id. Bearing these standards in mind, we review appellant's assignment of error.
 {¶ 8} Appellant presents two arguments under his assignment of error: (1) the trial court committed reversible error when it failed to conduct a hearing on his motion to stay further proceedings pending mediation and arbitration; and (2) the trial court committed reversible error when it found that the dispute resolution provisions in the operating agreement were unconscionable. With regard to appellant's first argument, appellant claims that, pursuant to R.C. 2711.03(A), a trial court is required to conduct a hearing when a party files a motion to compel arbitration in order to determine the validity of the arbitration clause; thus, the trial court erred here when it failed to conduct a hearing prior to denying his motion to stay. We disagree. Appellant moved for a stay pending arbitration, which is guided by R.C. 2711.02. Nowhere in R.C. 2711.02 is there a requirement for a hearing prior to determining the motion. See Castron v. Higginbotham, Cuyahoga App. No. 88559, 2007-Ohio-3260, at ¶ 9 (R.C. 2711.02 does not require a hearing). Although R.C. 2711.03 contains a requirement for a hearing when a party files a motion to compel arbitration, appellant did not seek such relief herein; thus, this provision is inapplicable.
 {¶ 9} In support of his claim that a hearing was required, appellant contends that, whenever the unconscionability of an arbitration agreement is raised, a hearing is required, regardless of whether it is in the context of a motion to stay under R.C. 2711.02 or a motion to compel under R.C. 2711.03. In support, appellant cites Bencivenni v.Dietz, Cuyahoga App. No. 88269, 2007-Ohio-637, in which the court held, with regard to a *Page 6 
motion to stay under R.C. 2711.02, "where a party disputes the making of the agreement, or alleges that the arbitration clause is unconscionable, a hearing should be held." Id., at ¶ 14. However, the court inDietz cites no authority for this proposition, and merely states a hearing "should" be held. We fail to find any statutory authority or case law to support the conclusion reached in Dietz, and that court's bare assertion is unpersuasive.
 {¶ 10} Furthermore, the Ohio Supreme Court has specifically held that a trial court considering whether to grant a motion to stay proceedings pending arbitration filed under R.C. 2711.02 need not hold a hearing, pursuant to R.C. 2711.03, when the motion is not based on R.C. 2711.03. See Maestle v. Best Buy Co., 100 Ohio St.3d 330, 2003-Ohio-6465, at syllabus. This court has acknowledged the Ohio Supreme Court's determination in Maestle that no hearing is required when a party files a motion to stay pursuant to R.C. 2711.02. See Pyle v. Wells FargoFinancial, Franklin App. No. 05AP-644, 2005-Ohio-6478, at ¶ 21;Cheney v. Sears, Roebuck Co., Franklin App. No. 04AP-1354,2005-Ohio-3283, at ¶ 21 (because appellee sought a stay of proceedings guided by R.C. 2711.02, and did not seek relief pursuant to R.C. 2711.03, pursuant to Maestle, the trial court was not required to hold a hearing regarding the making of the arbitration agreement). Other courts are in accord. See, e.g., Snider v. S. Forty Homes, Inc., Muskingum App. No. CT2007-0027, 2008-Ohio-385, at ¶ 18 (trial court was not required to hold a hearing when motion to stay was premised solely upon R.C. 2711.02); Household Realty Corp. v. Rutherford, Montgomery App. No. 20183, 2004-Ohio-2422, at ¶ 55. Therefore, we find that the trial court did not err in failing to conduct a hearing on appellant's motion to stay, pursuant to R.C. 2711.02, and we overrule appellant's assignment of error in this respect. *Page 7 
 {¶ 11} Appellant next argues that the trial court erred when it found that the dispute resolution provisions in the operating agreement were unconscionable. Section 10.9 of the operating agreement, entitled "Disputes Resolution," provides:
 Mediation. Any and all disputes or controversies by, between or among the Members or the Company, shall first be submitted to mandatory mediation under the then current rules of the American Arbitration Association. The Parties shall pay the costs of mediation equally (filing fees, administrative costs and the mediator's compensation). Attorney's fees shall not be included in costs. The Parties agree to mediate in good faith. If the dispute is not resolved or settled by mediation, the Parties then agree to mandatory arbitration as set forth below.
 Arbitration. Any and all disputes or controversies, by, between or among the Members or the Company and not resolved by mediation, whether legal or equitable, in any way arising out of or related to this Agreement, its construction, interpretation, application or enforcement, including any and all claims based on any statute, whether state or federal, claims based on promissory estoppel, implied contract, torts of every kind and description, claims of whatever nature or description brought against any organization or entity, whether now existing or later formed, which is affiliated with the Company by any ownership in common with the ownership of the Company, even though they are not signatories to this Agreement, shall be submitted to mandatory, binding, and final arbitration in compliance with and pursuant to the substantive and procedural rules of the Ohio Arbitration Act. The Parties stipulate that the terms of this Agreement will be a complete defense to any suit, action, or proceeding instituted in any court, State or Federal, or before any administrative tribunal. The issue of whether any claim, dispute or controversy is subject to arbitration shall also be submitted to final and binding arbitration under this paragraph. Should it be determined that any dispute between the Parties cannot or may not be arbitrated under the Ohio Arbitration Act, then, in that instance, mandatory, final and binding arbitration will be held under the Federal Arbitration Act. A single arbitrator under the then current rules of the American Arbitration Association shall conduct the arbitration. The arbitrator shall be an attorney at law licensed to practice *Page 8 
in the State of Ohio. The Parties shall pay the costs of arbitration (filing fees, administrative costs and the arbitrator's compensation) equally. Each Party shall pay their own costs associated with the arbitration including, but not limited to, travel expenses, attorney's fees, and their costs associated with discovery (i.e.[,] the cost of depositions and transcripts, and the costs incurred for the production of documents), unless otherwise provided by law. The hearing shall be held in Columbus, Ohio. All statute[s] of limitations that would be applicable in a court proceeding shall be applicable in any arbitration. Nothing in this Agreement shall give the arbitrator any authority, power or right to alter, change, amend, modify, add or subtract from the provisions of this Agreement. The decision of the arbitrator shall be final and binding on the Parties. Should legal action be necessary to compel arbitration, the Party moving for arbitration, or moving to stay legal action pending arbitration, shall be entitled to recover attorney's fees from the Party seeking to resist or avoid arbitration. The Parties specifically, knowingly, and voluntarily waive any right to resolve any claim in a judicial forum, including the right to a jury trial, and understand that the right to compel other parties to produce documents and be examined is more limited in arbitration than in a lawsuit and that the grounds to appeal or change an arbitration award are very limited.
 {¶ 12} A party raising the issue of unconscionability must demonstrate both procedural and substantive unconscionability. Taylor Bldg. Corp. ofAm. v. Benfield, 117 Ohio St.3d 352, 2008-Ohio-938, at ¶ 33. Procedural unconscionability pertains to circumstances surrounding the parties' bargaining on an agreement, such as the parties' age, education, intelligence, business acumen, and experience. Id., at ¶ 43. Procedural unconscionability also concerns who drafted the agreement, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the items subject to the agreement. Id., citing Collins v. Click Camera Video, Inc. (1993),86 Ohio App.3d 826, 834. In addition, procedural unconscionability involves consideration of the following factors: belief by the stronger party that there is no reasonable probability *Page 9 
that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; and knowledge of the stronger party that the weaker party is unable to reasonably protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement. Id., at ¶ 44, citing Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.
 {¶ 13} In determining substantive unconscionability, a court must consider the terms of the agreement and whether they are commercially reasonable. Khoury, supra, at ¶ 12. The court must consider the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. Id., citing Cronin v. California Fitness, Franklin App. No. 04AP-1121, 2005-Ohio-3273, citing Collins, supra.
 {¶ 14} We first address procedural unconscionability. Here, the trial court found there existed procedural unconscionability based upon the following interrelated reasons: (1) appellees relied upon appellant, as the attorney for the apartments and also as a member of CEI, to act as a fiduciary in the best interest of CEI, and thereby its members, and not his own best interest in drafting the arbitration provision; (2) in light of appellant's positions of trust as an attorney and experienced manager of real estate properties, appellees did not treat the transaction as one at arm's length and, therefore, were not aggressive in asserting their rights and interest with respect to the transaction; and (3) even though appellees were intelligent investors, it was not unreasonable for them to trust and believe that appellant, as an attorney and member of CEI, would act in the best *Page 10 
interests of the company and would not draft an agreement that would help appellant evade the discovery of his alleged fraudulent activities concerning CEI.
 {¶ 15} Appellant argues that there was no procedural unconscionability in the present case because: (1) appellees were well-educated, highly intelligent, and sophisticated business people; (2) appellees possessed a wealth of experience in business generally and in real estate transactions specifically; (3) appellees were both licensed mortgage brokers and co-owners of Spectrum; (4) appellees both entered into at least six other agreements with appellant and/or appellant's company, Fleetwood, in connection with the ownership and/or the operation of large apartment complexes, all of which contain similar or identical dispute resolution provisions; (5) John R. Davis ("Davis"), who was trustee of Davis trust, performed substantial financial analysis in preparation for the solicitation package for the apartment, and was responsible for structuring the debt for the project; (6) Davis and Shorr collected information for the project, including the operating agreement and management agreement with Fleetwood; (7) Davis and Shorr copied, collated, and mailed the operating agreement to all of the potential investors in the project; and (8) the operating agreement for the current apartment project was reviewed by Davis and Shorr several times, Davis suggested changes to the operating agreement, and changes were implemented; yet neither Davis nor Shorr ever requested any changes to the arbitration provision or even commented on the provision.
 {¶ 16} After a review of the record, we agree with appellant that there existed no procedural unconscionability under the present circumstances. The trial court's conclusions that procedural unconscionability existed were based upon the notion that *Page 11 
appellant had a fiduciary relationship with appellees as a member of CEI. However, although this may be true, we cannot find that this fact alone was sufficient to overcome the other circumstances present in this case. We disagree with the trial court's finding that, because appellant was a member of CEI and its attorney in some respects, appellees did not stand at arm's length in endorsing the operating agreement. Although appellees may have trusted appellant, and appellant admitted in his deposition that he had a fiduciary duty to the other members of CEI, such did not discharge appellees' duty to review the provisions of the operating agreement and negotiate any provisions they considered unacceptable. Initially, we find important that appellees had engaged in real estate transactions with appellant for approximately ten years and possessed significant business savvy and financial proficiency relating to such transactions. This is not a situation in which an experienced business took advantage of an inexperienced consumer with inferior aptitude. See, e.g., Brunke v. Ohio State Home Servs., Inc., Lorain App. No. 08CA009320, 2008-Ohio-5394, at ¶ 12 (in consumer contract, arbitration provision found unconscionable when consumer never attended high school, struggled with reading skills, and had poor quality of comprehension). Rather, the situation presented here was one in which all business parties approached the transaction with equal bargaining strength, thereby subjecting the arbitration provision to less scrutiny than such a provision in a consumer transaction. See, e.g., Williams v.Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 472-473 (in the context of sales agreements between consumers and retailers, arbitration clauses are subject to considerable skepticism upon review, due to the disparity in the bargaining positions of the parties). *Page 12 
 {¶ 17} It is also apparent that appellees were familiar with the specific operating agreement related to the apartments at issue here. Appellees reviewed the present operating agreement, knew they could suggest changes, and, in fact, suggested several modifications to the agreement, which were made. Appellant testified in his deposition that he circulated the operating agreement to appellees for their review, Davis suggested substantial changes, and changes were incorporated into the document. See Lentz v. Peridia, Inc., Erie App. No. E-07-070,2008-Ohio-4033, at ¶ 17 (despite the absence of counsel, there was no procedural unconscionability where the party contesting arbitration provision had prevailed in re-negotiating and amending various terms and provisions of the contract prior to its execution). There was no evidence presented to explain why appellees were unable to likewise review the arbitration provision and determine if it was acceptable to them. Appellant testified that he never received any comments or questions on the dispute resolution section of the agreement from any of the investors, and appellees do not allege that they were discouraged from asking questions. See Rinderle v. Whispering Pines Health CareCtr, Fayette App. No. CA2007-12-041, 2008-Ohio-4168, at ¶ 22 (no procedural unconscionability where there was no evidence that party to arbitration agreement was discouraged from asking questions). Appellees' failure to review the provision, or at least their failure to recognize any perceived unfairness in its verbiage, must be attributed to either their lack of business acumen or failure to weigh the consequences of the arbitration provision, neither of which can be forgiven based upon blind trust it placed in appellant. See Long v. N. Illinois Classic AutoBrokers, Summit App. No. 23259, 2006-Ohio-6907, at ¶ 12-13 (where person is capable of reading, understanding, and questioning an arbitration clause, it is not unconscionable; a *Page 13 
contracting party is presumed to know the reasonable import of the existence and scope of an arbitration clause).
 {¶ 18} We also find persuasive the fact that the parties had entered into at least six other operating agreements containing an identical or similar arbitration provision. Appellant testified in his deposition that the current operating agreement was "similar" to the agreements used in the other six transactions. See Broughsville v. OHECC, LCC, Lorain App. No. 05CA008672, 2005-Ohio-6733, at ¶ 23 (parties to arbitration agreement had previously entered into a similar agreement with an identical arbitration provision, and such an experience with similar transactions disfavors a finding of procedural unconscionability). Appellant also stated that all of the prior operating agreements were always circulated to Davis and Shorr. Thus, this was not appellees' first exposure to the provision, and they had ample time to review it over a period of several years. See, e.g.,Brunke, at ¶ 12 (arbitration provision unconscionable when it was consumer's first exposure to an arbitration provision and only spent a few minutes reviewing it).
 {¶ 19} In addition, the arbitration provision was set out in the operating agreement as a separate section under the "Disputes Resolution" heading, was clearly labeled "Arbitration" in bold-faced type, and was printed in the same sized font as the rest of the agreement. See id., at ¶ 23 (arbitration agreement had a clear heading), citing Broughsville, supra, at ¶ 22 (arbitration provision was written in plain language, in the same sized font as the rest of the agreement, and set out with a bold, capitalized heading "Resolution of Disputes"); see, also, Taylor, supra, at ¶ 46 (arbitration provision was not procedurally unconscionable because the arbitration clause appeared in standard, rather than fine, print and was not hidden). There was also no evidence that appellees did not *Page 14 
understand the arbitration provision or that the language was confusing or ambiguous in any respect. See Rinderle, supra, at ¶ 22-23 (arbitration agreement not procedurally unconscionable when there was no evidence that any part of the agreement was unintelligible and language was clear).
 {¶ 20} In sum, we find the mediation and arbitration provisions were not procedurally unconscionable. The parties approached the operating agreement on equal bargaining grounds. The parties were all educated and intelligent and possessed extensive business experience. Although appellant drafted the arbitration provision, appellees were free to raise any concerns regarding the provision and seek an alteration thereof. Though appellees were not lawyers, as appellant was, they were free to seek counsel and were not rushed into signing the agreement. The record fails to demonstrate that either party was in a stronger position than the other. There was no evidence that appellees had any physical or mental infirmities, or were ignorant, illiterate, or unable to understand the language of the agreement. Furthermore, appellant was equally subject to the arbitration provisions and would have been likewise bound by them had he been in any other dispute covered by the operating agreement. Any alleged disadvantages in the arbitration provisions would have equally inured to the detriment of appellant in certain circumstances. Appellant also had no reason to believe appellees were the weaker party who could not protect their own interests, as the parties had entered into numerous similar agreements in the past.
 {¶ 21} Having found the arbitration provision was not procedurally unconscionable, we need not address whether it was also substantively unconscionable. As explained above, a party raising the issue of unconscionability must demonstrate both procedural *Page 15 
and substantive unconscionability. See Taylor Bldg. Corp. of Am., supra, at ¶ 33. The failure to demonstrate either type of unconscionability alleviates the need to address the other. See Reno v. Bethel VillageCondominium Assn., Inc., Franklin App. No. 08AP-10, 2008-Ohio-4462, at ¶ 13 (because appellee was unable to demonstrate substantive unconscionability, the court did not need to address the issue whether the agreement was procedurally unconscionable). Therefore, because appellees failed to demonstrate procedural unconscionability, we cannot find the arbitration provision was unconscionable. Appellant's assignment of error is sustained in this respect.
 {¶ 22} Accordingly, appellant's assignment of error is sustained in part and overruled in part, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment affirmed in part and reversed in part;
 cause remanded.
 BRYANT and KLATT, JJ., concur. *Page 1