**W.K., Appellant,**

v.

**FARRELL et al., Appellees.**

[Cite as *W.K. v. Farrell,* 167 Ohio App.3d 14, 2006-Ohio-2676.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21105.

Decided May 26, 2006.

Paul R. Leonard and Harold R. Farquhar, for appellant.

Cheryl Atwell, for appellee Steve Zashin.

David E. Block and Jennifer Goldberg, for appellees Sterling Jewelers, Bob Farrell, and Mike Lynch.

Donna Farrell, personal representative of the estate of Bob Farrell.

FAIN, Judge.

{¶ 1} Plaintiff-appellant, W.K., appeals from an order of the Montgomery County Court of Common Pleas compelling arbitration of her complaint. W.K.

contends that her claims should not be subject to the arbitration agreement that she had signed prior to becoming employed with defendant-appellee Sterling Jewelers, Inc., because there was no meeting of the minds as to the agreement. She further contends that the arbitration agreement is adhesive and unconscionable. In addition, W.K. contends that the trial court erred in allowing discovery only as to the arbitration issue and that not all of her claims are arbitrable. We find no merit to any of W.K.'s contentions; therefore, the order of the trial court is affirmed.

I

{¶ 2} W.K. began searching for a new job in November 2000. At the age of 21, she had previously been employed in other local jewelry stores. When W.K. applied for employment with Sterling on November 16, 2000, she signed an employment application. Above the signature line, the document stated:

{¶ 3} "If employed by the company, you and the company agree to utilize the company's binding and mandatory alternative dispute resolution program to resolve certain workplace disputes. By signing this application, and in exchange for being hired by the company, you knowingly and voluntarily waive your applicable statutory rights to file a lawsuit against the company for a covered claim."

{¶ 4} Sterling's alternative dispute program, known as "RESOLVE," covers a variety of potential claims, including contractual and tort claims not covered by worker's compensation.

{¶ 5} Subsequently, W.K. was offered a position in one of Sterling's Columbus stores. When W.K. arrived for her first day of work on December 1, 2000, she also signed a separate document entitled "Resolve Program Alternative Dispute Resolution Arbitration Agreement," which she received as part of a large new-hire packet. The document states, "I hereby agree to utilize the Sterling Resolve Program to pursue any dispute, claim or controversy ('claim') against Sterling." The document further states:

{¶ 6} "I understand that by signing this agreement I am waiving my right to obtain any legal or equitable relief (e.g. monetary, injunctive or reinstatement) through any government agency or court, and I am also waiving my right to commence any court action."

{¶ 7} Further, the agreement provides, in bold print, "I understand that I would not be or remain employed with Sterling absent signing this agreement."

{¶ 8} W.K.'s educational background includes two years of community college and one year at Ohio State University. W.K. acknowledges that she signed the arbitration agreement. W.K. indicated in her deposition that she did not recall

reading the documents that she had signed in conjunction with being employed by Sterling.

{¶ 9} In 2003, W.K. was fired. W.K. filed a complaint alleging retaliation and reprisal in the workplace as a form of discrimination, invasion of privacy, wrongful termination, intentional infliction of emotional distress, negligent retention and supervision of employees, and tortious interference with an employment relationship. In addition to Sterling, W.K. named Sterling employees Bob Farrell and Mike Lynch and Sterling's attorney, Steve Zashin, as defendants to this action.

{¶ 10} Defendants filed a motion to stay the proceedings pending the outcome of arbitration and, in the alternative, to dismiss the action. The trial court stayed all discovery unrelated to the arbitration clauses, pending the resolution of defendants' motion to stay. Both sides filed briefs with the trial court on the issue of whether the claims listed in the complaint were properly subject to the arbitration agreement.

{¶ 11} The trial court dismissed the complaint and ordered that it be submitted to arbitration in accordance with the terms of the RESOLVE program. Specifically, the trial court found that an arbitration agreement did exist between W.K. and Sterling. The trial court found that the language of the arbitration clauses was not ambiguous and that W.K.'s claims were within the scope of the plain language of the agreement. The trial court found that the agreement was not unconscionable, because the agreement applied to both W.K. and Sterling equally and W.K. was on notice of the terms of the arbitration because the language was repeated in bold print in several portions of the documents. Likewise, the trial court found that the agreement was not an unenforceable contract of adhesion, because there was no evidence that W.K. could not have understood the words of the agreement had she read them. Despite W.K.'s contention that she was presented with a fat stack of papers to sign and was rushed onto the sales floor on her first day, W.K. herself acknowledged that she did not read the information either before or after she signed the documents. The trial court stated:

{¶ 12} "While Plaintiff further argues that she had no opportunity to negotiate the arbitration agreement, that argument belies logic; she cannot allege that she did not read the agreement and then allege that she had no opportunity to negotiate it."

{¶ 13} Lastly, the trial court noted that if W.K. had read the agreement and found it unsatisfactory, she could have sought employment with another jewelry store, rather than accept the requirement of arbitration.

{¶ 14} From the order of the trial court compelling arbitration of her claims, W.K. appeals.

## II

{¶ 15} The standard of review for a motion to stay proceedings pending arbitration is abuse of discretion. *Carter Steel & Fabricating Co. v. Danis Bldg. Constr. Co.* (1998), 126 Ohio App.3d 251, 254–255, 710 N.E.2d 299. An abuse of discretion involves more than an error of law or judgment, instead implying that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Absent an abuse of discretion, an appellate court will not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 16} When a party challenges an arbitration agreement by asserting that the provisions are unconscionable or that the contract is adhesive, the enforceability of the arbitration provision is an issue of law for the trial court. *Lindsey v. Sinclair Broadcast Group, Inc.*, Montgomery App. No. 19903, 2003-Ohio-6898, 2003 WL 22972357, ¶ 20. Because it involves an issue of law, this court must apply a de novo standard of review to W.K.'s unconscionability and adhesion claims.

## III

{¶ 17} W.K.'s first assignment of error is as follows:

{¶ 18} "The trial court erred as a matter of law in determining that an arbitration agreement existed between the parties."

{¶ 19} Under this assignment of error, W.K. alleges that the arbitration clause should not be enforced because there was no meeting of the minds as to the terms of the arbitration agreement. This argument is unpersuasive.

{¶ 20} Even when there is misrepresentation by one party of the contents of an agreement, the agreement is not void for fraud in the factum when the signer has an opportunity to read and understand the documents before execution. *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207. A person of ordinary mind cannot say that he or she is misled into signing an agreement that is different from the agreement the person intended to sign, when that person could have ascertained what agreement he was entering into by merely reading it when he signed it. Id., citing *Dice v. Akron, Canton & Youngstown RR. Co.* (1951), 155 Ohio St. 185, 191, 44 O.O. 162, 98 N.E.2d 301, reversed on other grounds (1952), 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398; *McCuskey v. Budnick* (1956), 165 Ohio St. 533, 535, 60 O.O. 493, 138 N.E.2d 386. If a person can read and is not prevented from reading what he signs, then he alone is responsible for his omission to read what he signs. Id.

{¶ 21} The Ohio Supreme Court recently stated that "it will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 503, 692 N.E.2d 574, citing *Upton v. Tribilcock* (1875), 91 U.S. 45, 50, 23 L.Ed. 203. If this practice were permitted, contracts would not be worth the paper on which they are written. Id.

{¶ 22} W.K. signed the employment application to work at Sterling, which contained language above the signature line indicating that by signing the agreement, W.K. would be subject to mandatory arbitration of any claims she might wish to pursue against Sterling, its employees, or its agents. After being offered employment with Sterling, W.K. signed the RESOLVE agreement on her first day of work. She has indicated that she did not read the document. However, it is well established that one party's failure to read relevant documents before signing them does not negate the intent to be bound by those documents. Thus, W.K.'s willingness to sign the documents sight unseen does not provide her with a valid defense that there was no meeting of the minds as to the essential terms discussed therein.

{¶ 23} W.K. further argues that her signature acknowledged only the receipt of the documents, not her assent to the terms therein. W.K. cites *Owens Flooring Co. v. Hummel Const. Co.* (2001), 140 Ohio App.3d 825, 749 N.E.2d 782, for the proposition that merely acknowledging receipt of documents containing an arbitration clause does not constitute a valid agreement to arbitrate. However, we have read *Owens,* and we have not found support therein for this proposition. W.K. failed to provide any alternative legal authority for this proposition. We do not accept W.K.'s argument that her signature was intended merely to evidence receipt of Sterling's new-hire packet. By having received a new-hire packet containing a provision requiring both W.K. and her employer to submit to arbitration claims arising out of her employment, W.K. was under a duty to speak if she did not intend to be bound by this requirement. Furthermore, W.K. signed the employment application, which was not contemporaneous with her having come into possession of any documents. The application indicates that her signature will serve to commit her to the use of Sterling's alternative dispute resolution program should she be hired.

{¶ 24} In addition, there is no requirement that an arbitration agreement be signed by either party in order to be enforceable. *Brumm v. McDonald & Co. Secs., Inc.* (1992), 78 Ohio App.3d 96, 102, 603 N.E.2d 1141. The only requirement is that the arbitration agreement be reduced to writing. Id. In this case, not only was the arbitration agreement in writing, but W.K. signed two separate documents indicating knowledge of the agreement's terms and an intent to be

bound by them. That being the case, the trial court did not err when it found that there was in fact an agreement to arbitrate in place between the parties.

{¶ 25} W.K.'s first assignment of error is overruled.

IV

{¶ 26} W.K.'s second assignment of error is as follows:

{¶ 27} "The trial court committed prejudicial error by not permitting the plaintiff to engage in any discovery which the court deemed unrelated to the arbitration agreement."

{¶ 28} W.K. argues that the trial court "chilled" her ability to present her case by preventing the parties from conducting discovery on the underlying claims before it was determined whether the claims are subject to arbitration. We disagree.

{¶ 29} Ohio has long had a strong public policy favoring arbitration. *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 711, 590 N.E.2d 1242. Arbitration is favored because it allows parties to bypass expensive and time-consuming litigation and "provides the parties thereto with a relatively expeditious and economical means of resolving a dispute." Id. at 712, 590 N.E.2d 1242.

{¶ 30} Other courts have held that a trial court must allow parties reasonable discovery on the issue of the enforceability of an arbitration clause before granting or denying a motion to stay proceedings pending arbitration. See *Harrison v. Toyota Motor Sales, U.S.A., Inc.* (Apr. 10, 2002), Summit App. No. 20815, 2002 WL 533478, at 4; *Sikes v. Ganley Pontiac Honda* (Sept. 13, 2001), Cuyahoga App. No. 79015, 2001 WL 1075726 at 3; *Berger v. Cantor Fitzgerald Secs.* (1996), 942 F.Supp. 963, 967.

{¶ 31} W.K. cites no case in support of her assertion that the trial court erred by permitting discovery only on the issue of arbitration. We are aware that the discovery process is often the most expensive and time-consuming facet of civil litigation. The trial court stayed discovery not directly related to the issue of arbitrability, pending its decision whether the claims were in fact subject to Sterling's arbitration program. Should the trial court have allowed discovery on claims that would be submitted to arbitration and subject to different fact-finding procedures than are employed in the courts, the trial court would have wasted both parties' time and money, without providing either with any legal or equitable advantage. Moreover, should the case have proceeded to trial, discovery on the underlying claims would have progressed as it does in other similar cases. The trial court did not abuse its discretion when it stayed discovery on the

underlying issues, pending its determination whether the case should be submitted to arbitration.

{¶ 32} W.K.'s second assignment of error is overruled.

## V

{¶ 33} W.K.'s fourth assignment of error is as follows:

{¶ 34} "The trial court committed reversible error by finding that the language contained in the two arbitration clauses was compatible."

{¶ 35} W.K. argues that the two arbitration clauses are inconsistent and in conflict, making it impossible for an employee to know which language controls applicable claims. This argument is unpersuasive.

{¶ 36} When the language of a written agreement is clear, a court may look no further than the writing itself to find the intent of the parties. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 219, 2003-Ohio-5849, 797 N.E.2d 1256, citing *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex.2000), 22 S.W.3d 417, 423. It is generally the role of the trier of fact to decide whether ambiguity is present in a written agreement. *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 66, 609 N.E.2d 144.

{¶ 37} If a court finds an ambiguity in a contract between parties of unequal bargaining power, the court will strictly construe the ambiguity in favor of the less powerful, nondrafting party. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d at 220, 797 N.E.2d 1256. W.K. asserts that there is an ambiguity inherent in contradictory language in the two arbitration clauses that renders both unenforceable. Furthermore, W.K. asserts that because there was unequal bargaining power between her and Sterling, the trial court should have resolved the ambiguity in her favor.

{¶ 38} The arbitration language in the application for employment, as quoted in W.K.'s brief, reads as follows:

{¶ 39} " 'If employed by the company, you and the Company agree to utilize the company's binding and mandatory alternative dispute resolution program to resolve *certain workplace disputes.* By signing this application and in exchange for being hired by the company, you knowingly and voluntarily waive your applicable statutory rights to file a lawsuit against the company for *covered claims.*' " (Emphasis sic.)

{¶ 40} W.K. alleges that the scope of claims subject to arbitration is more inclusive and expansive in the RESOLVE document, itself, which indicates that

the claims covered by the arbitration agreement include those brought under "any other federal, state, or municipal civil or human rights law, or any municipal, state or federal law, regulation or ordinance, or any public policy, contract, tort or common law."

{¶ 41} W.K. notes that the language in the RESOLVE document is "more inclusive and expansive" than the language in the employment application, which merely indicates that the agreement will cover "certain workplace disputes." The RESOLVE agreement explains in detail which disputes referenced in general in the employment application are covered claims for the purposes of the agreement. W.K. has not demonstrated an ambiguity; to the contrary, as she recognizes, the two agreements supplement and complement each other.[1]

{¶ 42} The trial court did not err in finding that the two agreements are neither ambiguous nor in conflict. W.K.'s fourth assignment of error is overruled.

## VI

{¶ 43} W.K.'s fifth assignment of error is as follows:

{¶ 44} "The trial court committed reversible error in finding that all of the plaintiff's claims were arbitrable."

{¶ 45} W.K. argues that not all of her underlying claims are covered by the RESOLVE program language and, therefore, not all are arbitrable. We disagree.

{¶ 46} Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit. *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648–649, 106 S.Ct. 1415, 89 L.Ed.2d 648. In deciding whether a particular claim is covered by an arbitration agreement, the courts apply a presumption that the specific claim is covered. *Didado v. Lamson & Sessions Co.* (1992), 81 Ohio App.3d 302, 304, 610 N.E.2d 1085. Courts should give an expansive interpretation to arbitration clauses. *Gaffney v. Powell* (1995), 107 Ohio App.3d 315, 320, 668 N.E.2d 951. An arbitration clause should not be ignored unless there is positive assurance that the clause cannot reasonably be interpreted so that the dispute at issue is covered. *Ohio Patrolmen's Benevolent Assoc. v. Lordstown* (1997), 118 Ohio App.3d 9, 11, 691 N.E.2d 1069.

{¶ 47} W.K.'s underlying claims are contract and tort claims, both of which are included in the plain language of the arbitration agreement. As the trial court

---

1. The defendants note that W.K.'s arguments "might be more compelling had she read the agreements at issue and could attest she was confused."

noted, the arbitration agreement does expressly exclude certain types of claims; however, none of W.K.'s underlying claims fall within those categories. Although the arbitration agreement does not use the specific phrasing that W.K. employed in her complaint to describe the claims subject to arbitration, that fact does not rebut the presumption that these claims are in fact covered by the agreement.

{¶ 48} W.K. relies on the decision in *Boedeker v. Rogers* (1999), 136 Ohio App.3d 425, 736 N.E.2d 955, to support her assertion that an arbitration clause cannot be invoked to arbitrate claims relating to conduct outside the scope of employment. W.K. has alleged that her claims involve conduct by the defendants that is clearly outside the scope of their employment and is therefore not subject to arbitration. However, W.K.'s reliance is misplaced. First, W.K. does not address the issue in *Boedeker* that the parties seeking to enforce the arbitration clause had not been parties to the original contract and arbitration agreement, nor had they in any other cognizable way expressed any intent to be bound by either. Second, the conduct that the Eighth District Court of Appeals found to be outside the scope of the parties' employment involved breach of fiduciary duty rather than breach of terms of employment. Therefore, W.K.'s citation of this case does not negate the fact that the claims fit squarely within the scope.

{¶ 49} Specifically, W.K.'s invasion-of-privacy claim, which she contends is unrelated to her employment, is founded on her allegation that her employer, through its agents, asked her inappropriate questions of a personal nature, which they required her to answer as a condition of continuing her employment. If she had been asked these same questions by a third person, not her employer, she might well have been offended, and might properly have taken offense. But as long as she was free to respond, "that's none of your business," or some less temperate equivalent, no cause of action would have accrued. It is precisely because W.K. was presented with the choice of answering these intrusive questions or being fired from her job that she has a plausible cause of action for invasion of privacy. Thus, the employment relationship between W.K. and her interrogators is essential to the theory of her cause of action, and her cause of action therefore arises out of her employment relationship.

{¶ 50} W.K.'s fifth assignment of error is overruled.

## VII

{¶ 51} W.K.'s third and sixth assignments are as follows:

{¶ 52} "The trial court erred as a matter of law in finding that the documents at issue were not adhesive.

{¶ 53} "The arbitration clauses set forth in this case are both substantially and procedurally unconscionable and therefore unenforceable."

{¶ 54} W.K. argues in these two assignments of error that the arbitration agreement should not be enforced because it is an unconscionable contract of adhesion. We disagree.

{¶ 55} Unconscionability is generally recognized as the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294. In order for a contract provision to be unconscionable, there must exist a "certain quantum" of both "substantive" and "procedural" unconscionability. Id. Substantive unconscionability exists when the contract terms are determined to be commercially unfair and unreasonable. *Cross v. Carnes* (1998), 132 Ohio App.3d 157, 169–170, 724 N.E.2d 828.

{¶ 56} Procedural unconscionability, on the other hand, exists when it is determined that there was no voluntary meeting of the minds by the parties to the contract under circumstances particular to that contract. Id. at 170, 724 N.E.2d 828. Likewise, a contract is adhesive if it is a standardized contract form offered on essentially a take-it-or-leave-it basis, without affording a consumer a realistic opportunity to bargain and under such conditions such that the consumer cannot obtain the desired product or services except by acquiescing in form contract. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 482, 700 N.E.2d 859.

{¶ 57} In order to raise the issue of the possible unconscionability or adhesive nature of a contract, a plaintiff must show (1) that the contract terms are one-sided or unreasonably favorable to the other party, (2) that disparity between the parties' bargaining power denies the less advantaged party meaningful choice in accepting the terms of the contract, and (3) that the less advantaged party cannot obtain the desired product or services except by acquiescing in the contract. *Genaw v. Lieb*, Montgomery App. No. 20593, 2005-Ohio-807, 2005 WL 435211, citing *Haga v. Martin Homes, Inc.* (Aug. 4, 2000), Tuscarawas App. No. 2000AP020018, 2000 WL 1133267.

{¶ 58} In many cases the meaningfulness of the choice is negated by a gross inequity of bargaining power. *Orlett v. Suburban Propane* (1989), 54 Ohio App.3d 127, 129, 561 N.E.2d 1066. However, mere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.* (1991), 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26; *Neubrander v. Dean Witter Reynolds, Inc.* (1992), 81 Ohio App.3d 308, 311, 610 N.E.2d 1089. When a candidate for employment is free to look elsewhere for employment and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable. *Butcher v. Bally Total Fitness Corp.*, Cuyahoga App. No. 81593, 2003-Ohio-1734, 2003

WL 1785027, ¶ 39, citing *E.E.O.C. v. Frank's Nursery & Crafts* (E.D.Mich.1997), 966 F.Supp. 500. In *Butcher,* at ¶ 40, the court held:

{¶ 59} "The appellant is young, inexperienced and was subjected to inappropriate and provocative displays and gestures in the workplace. However, she was free to find other employment rather than agree to be bound by the terms of the EDRP [employment dispute resolution procedure] to address any employment-related disputes. Whether she read the paperwork or disregarded the paperwork, she signed the papers stating she agreed to the terms of the EDRP in order to be hired. The appellant cannot now claim that failing to read the terms of a contract when given the express opportunity to do so amounts to an unconscionable contract."

{¶ 60} W.K. has analogized her situation to the situation in *Caldwell v. KFC Corp.* (1997), 958 F.Supp. 962, 974–75. In that case, the court found that the arbitration clause that the plaintiff signed was unconscionable and adhesive, because if the plaintiff wanted employment, he was required to sign the document in order to be hired. W.K. asserts that this court should follow this persuasive authority, because the facts of this case "fall almost in perfect alignment" with those in *Caldwell.* We disagree. The facts in *Caldwell* are significantly different from those in the case before us. In *Caldwell,* the plaintiff was a parolee in dire need of a job, possessing an 11th grade education and a lengthy criminal record.

{¶ 61} W.K.'s situation is more similar to the facts described in *Butcher.* In *Butcher,* Cuyahoga App. No. 81593, 2003-Ohio-1734, 2003 WL 1785027 at ¶ 3, the plaintiff was in her early twenties with some community college education. The plaintiff signed an employment application stating that she would be subject to arbitration of employment-related claims if she should accept employment with Bally's. Id. at ¶ 4. When she arrived for her first day of work, she was instructed to sign some new-hire paperwork, including an employee handbook containing in greater detail the terms of the arbitration agreement. Id. at ¶ 5–6. The plaintiff signed a document indicating that she agreed to be bound by the arbitration agreement. Id. at ¶ 11. The plaintiff, in fact, had not read any of the documents that she signed. Id. at ¶ 41.

{¶ 62} In the case before us, W.K., a woman in her twenties with three years of college education, failed to read the documents she signed. Moreover, W.K. had been employed at another job when she was hired by Sterling, and there is nothing in the record to indicate that she faced dire consequences if she did not accept employment with Sterling. While it may be true that she possessed less bargaining power than Sterling, W.K. has failed to assert any facts demonstrating that she was at such a disadvantage that she was essentially forced to accept employment with Sterling, subject to Sterling's arbitration agreement. We

conclude that in this case, as in *Butcher,* supra, the arbitration agreement was not a procedurally unconscionable contract of adhesion.

{¶ 63} Furthermore, there is nothing in the record to suggest that the terms of the agreement are substantively unconscionable. First, the terms of the agreement obligate both W.K. and Sterling to arbitrate any claims either may have against the other. Second, W.K. is required to pay only $150 towards the cost of arbitration, whereas Sterling is required to pay the balance of the costs of the process. As the trial court indicated, obligating W.K. to pay the first $150 is not substantially different from the filing fee imposed by the clerk of courts in order to file a civil action.

{¶ 64} Because we conclude that the arbitration agreement in this case is neither adhesive nor unconscionable, W.K.'s third and sixth assignments of error are overruled.

## VIII

{¶ 65} All of W.K.'s assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

DONOVAN, J., concurs.

GRADY, P.J., dissents.

GRADY, Presiding Judge, dissenting.

{¶ 66} I respectfully dissent. An extremely broad arbitration clause contained in an agreement that is signed under duress by a new employee on her first day of employment while she is being rushed to begin work on the employer's sales floor should not be used to prevent the employee from presenting claims of gross employer misconduct to a jury.

{¶ 67} It is undisputed that W.K. would have been fired on her first day of employment had she not signed the very broad arbitration provision contained in the Resolve Program Alternative Dispute Resolution Arbitration Agreement, which was included in the new-hire packet of information. Also, soon after receiving the packet of information, appellant was rushed by Sterling Jewelers, Inc.'s personnel to complete the paperwork so that she could begin doing what she was paid to do—meet with customers on the company's sales floor.

{¶ 68} Appellant admitted that she does not remember reading the document before signing it. While I agree with the majority that the failure to read an agreement does not excuse a party from being bound by the agreement's terms, I find that the realities of the circumstances under which appellant signed the

agreement and the subsequent unconscionable acts of appellee toward appellant, if proven, are such that it would be inequitable to enforce the arbitration clause and preclude appellant from an opportunity to present any meritorious claims to a jury.

{¶ 69} Appellees' alleged conduct toward appellant is shocking to the conscience. According to the complaint, appellees repeatedly asked appellant irrelevant and intrusive questions regarding appellant's past romantic relationships, whether she had had breast-enhancement surgery, whether she had discussed her breast-enhancement surgery with other employees, and whether she had engaged in sexual intercourse at the employer's convention. Appellees conducted this interrogation in spite of the repeated warnings by appellant's counsel that such questioning was entirely inappropriate and with knowledge of the fact that appellant had been raped in her youth, was taking antidepressant and antianxiety medication, and had been harassed at her home by private investigators. Following the intrusive questioning, appellee Sterling Jewelers, Inc. fired appellant for failing to cooperate as she had agreed.

{¶ 70} Assuming appellant's allegations can be proven, an employer should not be permitted to avoid a jury trial on claims of gross employer misconduct by invoking an arbitration clause contained in an agreement that a new employee was rushed to sign on her first day of employment when the employee's continued employment was contingent on signing that agreement. Appellees' alleged misconduct is especially troublesome given the power that an employer holds over an employee in the work environment and the knowledge that the employer had of the appellant's particular circumstances. In my opinion, forcing arbitration of appellant's claims for relief would constitute an unconscionable enforcement of the arbitration clause. Consequently, based on the unique circumstances presented by appellant, I would sustain the third and sixth assignments of error and reverse the trial court's order referring appellant's claims to binding arbitration.