**BANKS, Appellant,**

v.

**JENNINGS et al., Appellees.**

[Cite as *Banks v. Jennings,* 184 Ohio App.3d 269, 2009-Ohio-5035.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22855.

Decided Sept. 25, 2009.

Garofalo, Mann & Schultz, and Kevin Attkisson, for appellant.

Roderer Law Office, L.L.C., and Paul Roderer Sr., for appellee Allstate Insurance Company.

BROGAN, Judge.

{¶ 1} This is an appeal by Rick Banks, plaintiff-appellant, from a trial court's grant of summary judgment to Allstate Insurance Company, defendant-appellee, on the enforceability of an arbitration provision in an automobile insurance policy. The parties dispute Banks's entitlement to uninsured-/underinsured-motorists ("UIM") benefits under two Allstate insurance policies. According to the arbitration provision in each policy, the parties agreed that they would submit such a dispute to a panel of arbitrators in Pennsylvania, which Allstate seeks to do. Banks contends that the arbitration provision is unenforceable because it violates strong public policy in Ohio that an Ohio court should apply Ohio law to resolve claims based on personal injury occurring in Ohio. We affirm.

# I

{¶ 2} In January 2005, in Dayton, Ohio, Rick Banks was seriously injured in an automobile accident. Banks resides in Pennsylvania with his parents and was in Dayton to interview for a job. Although he owns a vehicle, Banks drove his mother's car to Ohio. At the time of the accident, though, Banks was a passenger. Douglas Jennings, his Ohio friend, was driving when he collided with a transport truck. Banks claims coverage under two Allstate automobile insurance policies— his parents' policy insuring their cars and his policy insuring his vehicle.[1]

{¶ 3} Two years after the accident, in January 2007, Banks, still living in Pennsylvania, filed a complaint in the Montgomery County Court of Common Pleas. Among his claims are two (one for each policy) that seek declaratory judgment against Allstate for UIM benefits.[2] Banks asserts that under these policies he has UIM coverage of up to $250,000. The UIM coverage section in each policy contains a mandatory arbitration provision that requires UIM cover-

---

1. All those involved in the accident were insured. Jennings had coverage under a policy he holds with Progressive Preferred Insurance Company, which has policy limits of $50,000. Doyle Loudin, the driver of the transport truck Jennings collided with, and North American Van Lines, Inc., the owner of the truck, between the two of them, have coverage under unspecified policies that combined have policy limits of around $1,000,000.

2. Banks asserted four claims in all. The first sought recovery from Jennings, Loudin, and Van Lines for their negligence. The second sought declaratory judgment on Banks's entitlement to UIM benefits from Jennings's insurer, Progressive. Cross-claims in various combinations were also filed by the parties, but all such claims were eventually dismissed. Also, Progressive filed suit against Jennings, Loudin, and Van Lines to protect its right to subrogation for medical and other payments. That case was consolidated with Banks's case, and Progressive eventually dismissed all of its claims. Banks eventually dismissed his claim against Progressive, settled with Jennings for the latter's policy limits of $50,000 and dismissed the claim against him, and settled with Loudin and Van Lines for $115,000, though there is nothing in the record to show that the claim against either was dismissed.

age disputes over the right to and the amount of benefits to be decided by arbitration in the Pennsylvania county in which Banks resides.

{¶ 4} Based on the arbitration provision, Allstate filed a motion to dismiss Banks's claims and asked for a stay of the action. Because Allstate attached one of the policies to its motion as supporting evidence, the trial court sua sponte converted the motion to dismiss into a motion for summary judgment. On July 8, 2008, the trial court granted Allstate summary judgment on the enforceability of the arbitration provision and ordered the action stayed pending the outcome of arbitration.

{¶ 5} Banks's appeal from this judgment is now before us.

## II

{¶ 6} The sole assignment of error reads, "The trial court erred by granting Allstate's motion for summary judgment."

{¶ 7} Banks contends that the arbitration provision is unenforceable because Ohio law and public policy require that his claim be resolved in Ohio, under Ohio law. Banks argues that Ohio has a strong public-policy interest in his claim because of the relationship between him and Allstate. Banks further argues that Ohio law is the appropriate law to apply because Ohio has the most significant relationship to the accident and the parties. Finally, Banks argues that Pennsylvania tort law on joint and several liability will not allow him to recover.

{¶ 8} The principal issue is whether the arbitration provision in the UIM coverage section of the insurance policy is enforceable.[3] Banks and Allstate do argue this issue, but they do so using a forum-selection clause analysis. This is incorrect.

{¶ 9} A name is of course unimportant if, like Juliet, one sees beyond the name to the substance of that which is named.[4] The parties here, like the Montagues and Capulets, seem to suffer from a form of blindness, for Banks and Allstate (and even the trial court) affix the name forum-selection clause to the provision at issue, but fail to see its substance—arbitration.[5] Our review of the

---

3. The two policies are identical in all relevant respects, so we will consider them as one.

4. "What's in a name? That which we call a rose By any other name would smell as sweet." Shakespeare, Romeo and Juliet, Act II, Scene ii.

5. The arbitration provision reads this way:
   **If We Cannot Agree**
   If the insured person and we [Allstate] do not agree:
   1. on that person's right to receive damages, or

policy reveals that a forum-selection clause,[6] as well as a choice-of-law provision,[7] are actually found in the *General Provisions* section. Forum-selection and choice-of-law clauses reflect agreement on which public court and which public law will resolve disputes that arise under the contract. Complicated issues of connections to competing forums become relevant in order to show which state has the greatest interest in resolving the dispute (which are the issues that the parties here argue). Arbitration, conversely, reflects an agreement to resolve disputes in a private, extra-judicial way.

{¶ 10} Analytically, when a dispute falls within an arbitration provision, the provision must be addressed first. If the provision is enforced, the dispute proceeds to arbitration according to the provision. Only when the provision is found unenforceable do questions of forum selection and choice of law arise because, absent arbitration, a court must resolve the dispute. In this case the issue is the first—whether the arbitration provision will be enforced, compelling resolution of the parties' dispute by arbitration. The question is not which court according to the forum-selection clause should resolve the dispute, nor is it what law according to the choice-of-law provision should be used to resolve the dispute. The question is, in essence, whether a court of law should resolve the claim at all.

{¶ 11} We will review the trial court's grant of summary judgment de novo. A trial court should grant summary judgment if the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C); *Cohen v. G/C Contracting Corp.*, Greene App. No. 2006 CA 102, 2007-Ohio-4888, 2007 WL 2743707, at ¶ 20 (reviewing de novo a trial court's grant of summary judgment on the existence of a valid arbitration agreement).

{¶ 12} The Ohio Arbitration Act ("OAA"), which "sets forth a trial court's role in construing and enforcing arbitration agreements," *Lindsey v. Sinclair Broadcast Group, Inc.*, Montgomery App. No. 19903, 2003-Ohio-6898, 2003 WL 22972357, at ¶ 15, in effect, requires a court to enforce most arbitration agree-

---

2. on the amount of those damages, then upon the written request of either party the disagreement will be settled by arbitration as provided under the Pennsylvania Uniform Arbitration Act of 1927. * * * Unless you and we agree otherwise, arbitration will take place in the county in which your address shown on the declarations page is located. * * * A decision agreed to by two of the three arbitrators will be binding and may be entered as a judgment in a proper court. Policy Endorsement AU10781, Section IV, Part B.

6. Under the heading "**Where Lawsuits May Be Brought**," it reads in part:
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy shall be brought, heard, and decided only in a state or federal court located in Pennsylvania. Policy Endorsement AU10781, Section I, Part B.

7. See id. (under the heading "**What Law Will Apply**").

ments.  An arbitration provision is "valid, irrevocable, and enforceable," under the OAA, "except upon grounds that exist at law or in equity for the revocation of any contract." *Garcia v. Wayne Homes, L.L.C.* (April 19, 2002), Clark App. No. 2001 CA 53 2002, 2002 WL 628619, *4; R.C. 2711.01(A) ("A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract").  When a trial court determines that an arbitration provision is enforceable, the OAA instructs the court to stay the case pending the outcome of arbitration.  *Garcia* at * 5 ("R.C. 2711.02 requires a court to stay an action if the issues involved fall under a valid, enforceable arbitration agreement"); R.C. 2711.02(B) ("If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement").

{¶ 13} An agreement to arbitrate contractual disputes is favored by public policy.  "Ohio and federal courts encourage arbitration to settle disputes." *Baker v. Schuler,* Clark App. No. 02CA0020, 2002-Ohio-5386, 2002 WL 31243491, at ¶ 30; *Garcia* at *5, citing *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 500, 692 N.E.2d 574; *Southland Corp. v. Keating* (1984), 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1.  Not only courts, but also the General Assembly favors arbitration, *Garcia,* which is reflected by its enactment of the OAA.

{¶ 14} That a provision requires arbitration in another state does not affect its enforceability.  In *Lindsey v. Sinclair Broadcast Group, Inc.,* 2003-Ohio-6898, 2003 WL 22972357, a provision (found in an agreement entered into in Ohio) required employment disputes to be arbitrated in Baltimore, Maryland. The employee-plaintiff contended that the agreement was unenforceable because the provision that required arbitration in Maryland was unconscionable.  Based on the OAA, we disagreed and affirmed the trial court's enforcement of the arbitration provision and its order staying the action pending arbitration.  Therefore, that the provision here requires arbitration in Pennsylvania does not change the analysis.

{¶ 15} While we do not know for certain, given the space that Banks devotes to it in his brief, we suspect that the reason Banks filed suit in Ohio despite having little connection to the state, other than as the location of his accident, and the reason that he is fighting vigorously to prevent arbitration in Pennsylvania, stems from his belief that between Ohio and Pennsylvania tort law, he will be permitted

to obtain UIM benefits only under Ohio law. As Banks describes at length, Ohio and Pennsylvania joint-and-several liability law differ on how they apportion liability among multiple tortfeasors. For reasons we need not get into, Banks believes that only Ohio law will yield him a favorable resolution.

{¶ 16} This difference in tort law is likely irrelevant for two reasons. First, under Ohio law, UIM coverage issues are governed by contract, not tort, law. See *Ohayon v. Safeco Ins. Co. of Illinois* (2001), 91 Ohio St.3d 474, 747 N.E.2d 206, paragraph one of the syllabus ("An action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions"). While Banks suggests that the underlying dispute here concerns the tort recovery of damages for his personal injuries, the dispute actually concerns the proper interpretation of a contract, the insurance policy. Second, a Pennsylvania arbitration panel is not bound to apply Pennsylvania law, or the law of any jurisdiction. Being extra-judicial, an arbitrator is generally free to resolve a dispute in a way and for reasons that she alone believes are just, subject only to very limited court review.[8] This means that Pennsylvania's unfavorable tort law will not necessarily preclude the resolution that Banks seeks.

{¶ 17} The trial court properly granted summary judgment on the issue of the arbitration provision's enforceability. And the court properly stayed the action pending arbitration. The sole assignment of error is overruled.

### III

{¶ 18} Having overruled the sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

FROELICH, J., concurs.

FAIN, J., concurs separately.

FAIN, Judge, concurring.

{¶ 19} I concur in Judge Brogan's opinion for the court.

{¶ 20} I write separately merely to emphasize that in reaching my conclusion in this case, I am not persuaded that the application of the substantive law of

---

8. See, e.g., R.C. 2711.10 (stating the reasons in Ohio for which a court may vacate an arbitrator's award) and R.C. 2711.11 (stating the reasons in Ohio for which a court may modify an arbitrator's award).

Pennsylvania by the arbitration panel, should the arbitration panel choose to apply Pennsylvania law, would violate an important public policy of Ohio. Banks's argument seems to be that Ohio necessarily has an important public policy in favor of applying Ohio law to any controversy that has a significant connection to Ohio, when Ohio law conflicts with another state's law. This would make for a simple choice-of-law rule, but I do not understand it to be the law of choice-of-law in Ohio.

{¶ 21} I understand the public-policy exception to Ohio's general choice-of-law rules to require something more than that the law of the other state be different from the law of Ohio; I understand it to require that the law of the other state be offensive to an important public policy of Ohio. An example might lie in the proposed application of a sister state's recognition of a same-sex union as triggering an interspousal immunity of some kind. The Defense of Marriage Amendment to the Ohio Constitution, Section 11, Article XV, arguably establishes an important public policy of this state that would be offended thereby, even if ordinary choice-of-law rules would select the law of the sister state for purposes of determining whether an interspousal immunity was applicable in the case.