[Cite as *Gaither v. Wall & Assocs., Inc.*, 2017-Ohio-765.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STANLEY GAITHER | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 26959 |
| | : | |
| v. | : | Trial Court Case No. 2015-CV-04573 |
| | : | |
| WALL & ASSOCIATES, INC., et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendants-Appellees* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of March, 2017.

. . . . . . . . . .

JEREMIAH E. HECK, Atty. Reg. No. 0076742, KATHERINE L. WOLFE, Atty. Reg. No. 0086356, 580 East Rich Street, Columbus, Ohio 43215
    Attorneys for Plaintiff-Appellant

BARRY F. FAGEL, Atty. Reg. No. 0060122, 312 Walnut Street, Suite 3100, Cincinnati, Ohio 45202
    Attorney for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Plaintiff-Appellant, Stanley Gaither, appeals from a judgment dismissing his action against Defendants-Appellees, Wall and Associates, Inc., et. al,, without prejudice, based on lack of jurisdiction. In support of his appeal, Gaither contends that the arbitration clause in the contract between the parties is unenforceable because is it unconscionable and is against public policy.

{¶ 2} We conclude that the arbitration agreement was not procedurally unconscionable. Consequently, because both procedural and substantive unconscionability must be established in order to prevent enforcement of an arbitration agreement, Gaither cannot prevail on this claim. However, we also conclude that Gaither is correct in contending that the "loser pays" provision in the arbitration agreement is unenforceable because it is against public policy. This provision requires the losing party to pay the costs, including attorney fees, of the party who substantially prevails in arbitration. Although this provision is against public policy, it can be severed from the arbitration agreement. Thus, the arbitration agreement may still be enforced, and the motion for stay of the proceedings, pending arbitration, was proper.

{¶ 3} Nonetheless, the trial court erred in dismissing the case for lack of jurisdiction, rather than granting the motion for a stay pending arbitration. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded so that the trial court can enter an order staying the proceedings pending arbitration, with the provision that the clause pertaining to payment of costs to the substantially prevailing party is excised from the agreement.

I.   Facts and Course of Proceedings

{¶ 4} In September 2015, Stanley Gaither filed a complaint against Wall and Associates, Inc., and John Does 1-3 (collectively, "W&A").   The complaint alleged that W&A had violated the Ohio Consumer Sales Practices Act, R.C. 1345.01 to 1345.99 (CSPA), and the Ohio Debt Adjustment Companies Act, R.C. 4710.01 to 4710.99. Gaither further alleged that W&A had committed fraud.   These alleged violations occurred in connection with a consumer sales agreement entered into by Gaither and W&A.

{¶ 5} According to the complaint, Gaither was experiencing financial difficulty in 2014, including paying his taxes.   Although Gaither had previously arranged a payment plan with the Internal Revenue Service ("IRS"), Gaither decided to contract with W&A based on representations that W&A could get his tax liens removed within 48 hours and would negotiate with the IRS to lower Gaither's overall tax debt.   After speaking with a representative of W&A, Gaither signed a written contract on October 29, 2014, and paid an initial payment of $2,500.   He also paid $350 in monthly payments for five months, for a total payment of $4,250.   Apparently Gaither became dissatisfied with the resolution of the case and stopped payments to W&A.   He then filed suit in September 2015.

{¶ 6} Gaither attached a copy of the contract to the complaint.   The contract is three pages long.   In the contract, W&A agreed to represent Gaither administratively before the tax authorities in connection with Gaither's personal federal and state income tax for the tax years 1999-2003, 2005-2006, and 2010-2011.   Paragraph 13 of the contract provided as follows:

13.   Any controversy, dispute, or claim arising out of, or under, or related

to this Agreement will be finally settled by arbitration conducted with, and in accordance with the Rules of, the McCammon Group, an independent arbitration service headquartered in Virginia. Any such arbitration will be conducted before and decided by one arbitrator, unless the parties to this agreement agree otherwise. Unless the parties agree to an arbitrator, the parties to the arbitration will request that the McCammon Group provide the parties with a list of five potential arbitrators. Each party will then strike from the list names one after another until one name is left. After the rights to strike are exercised, the individual remaining on the list will be the arbitrator. Any such arbitration will take place in Fairfax, Virginia. The arbitrators in any such arbitration will apply the laws of the Commonwealth of Virginia and the United States of America. In any arbitration under this Agreement, the Agreement will be deemed to have been made in, and will be governed by and construed under the laws of, the Commonwealth of Virginia and the United States of America. Any decision rendered by the arbitrator will be final and binding and judgment thereon may be entered in any court having jurisdiction or application may be made to such court of an order of enforcement as the case may require. Each of the Parties to this Agreement intend that this agreement to arbitrate be irrevocable and the exclusive means of settling all disputes under this Agreement, whether for money damages or equitable relief. If arbitration is invoked in accordance with the provisions of this Agreement, the substantially prevailing party in the arbitration will be entitled to recover from the other all costs, fees, and

expenses pertaining or attributable to such arbitration, including reasonable attorneys' fees for those claims on which the substantially prevailing party prevailed.

Doc. #1, Complaint, Ex. A, p. 3.

{¶ 7} The contract further provided that it would be deemed to have been entered into in Virginia and subject to the laws of Virginia. It also vested jurisdiction exclusively in the Virginia courts located in Fairfax, Virginia.

{¶ 8} After W&A answered the complaint, W&A filed a motion to dismiss, or in the alternative, to stay the proceedings pending arbitration. Additional memoranda were filed, and on November 30, 2015, the trial court concluded that the arbitration agreement was enforceable. The court then dismissed the case without prejudice, based on lack of jurisdiction. Gaither appeals from the judgment of dismissal.


## II. Was the Arbitration Clause Enforceable?

{¶ 9} Gaither's sole assignment of error states that:

The Trial Court Erred in Finding the Arbitration Clause Contained in

the Consumer Contract Between the Parties Enforceable.

{¶ 10} Under this assignment of error, Gaither contends that the arbitration clause was procedurally and substantively unconscionable. Gaither further contends that the clause is not enforceable because it violates public policy. And finally, Gaither argues that even if the arbitration clause is enforceable, any arbitration should take place in Ohio, based on Ohio public policy.

{¶ 11} "The Ohio General Assembly in R.C. Chapter 2711 has expressed a strong

policy favoring arbitration of disputes." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 25. In this regard, R.C. 2711.01(A) provides that:

> A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

{¶ 12} "Ohio law directs trial courts to grant a stay of litigation in favor of arbitration pursuant to a written arbitration agreement on application of one of the parties, in accordance with R.C. 2711.02(B)." *Taylor* at ¶ 28. R.C. 2711.02(B) requires trial courts to stay trial until arbitration has been held, where the court is satisfied that the issues involved in the court action are "referable to arbitration under an agreement in writing for arbitration * * *."

{¶ 13} We have previously observed that "when a dispute falls within an arbitration provision, the provision must be addressed first. If the provision is enforced, the dispute proceeds to arbitration according to the provision. Only when the provision is found unenforceable do questions of forum selection and choice of law arise because, absent arbitration, a court must resolve the dispute." *Banks v. Jennings*, 184 Ohio App.3d 269,

2009-Ohio-5035, 920 N.E.2d 432, ¶ 10 (2d Dist.). Therefore, the first consideration is whether the arbitration provision is enforceable.

**{¶ 14}** As was noted, W&A asked the trial court to dismiss the action, or alternatively, to stay the proceedings pending arbitration. The trial court concluded that the arbitration agreement was enforceable and dismissed the action without prejudice, for lack of jurisdiction.

**{¶ 15}** Under *Banks*, the trial court should have either granted a stay of the action pending arbitration, if the court concluded that the arbitration clause was enforceable, or denied the stay, at which time the court could have considered whether it had jurisdiction over the action (based on forum selection and choice of law). The trial court did not specifically discuss the forum selection clause in the contract or principles pertaining to choice of law. However, the court dismissed the action for lack of jurisdiction. This was an implied finding on forum selection and choice of law, and was premature under our decision in *Banks*.

**{¶ 16}** Nonetheless, the trial court did consider enforceability of the arbitration provision in its decision, and consistent with *Banks*, we will consider that issue. The Supreme Court of Ohio has noted that "[u]nconscionability is a ground for revocation of a contract." (Citation omitted.) *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 33. This determination is a question of law, and we review the trial court's decision de novo. *Id.* at ¶ 35. If the trial court makes factual findings to support its decision about whether the contract is unconscionable, however, we give these findings great deference. *Id.* at ¶ 38.

**{¶ 17}** In the case before us, the motion was decided based on the allegations in

the complaint and the contract language; no factual materials were submitted other than the affidavit of Mark Yost, the Chief Executive Officer of W&A. However, Yost simply identified the contract and the fact that W&A is a Virginia corporation. The residence of the corporation was generally irrelevant to the arbitration issues, and W&A's answer had already admitted the existence of the contract (which was attached to the complaint as Ex. A). As a result, the trial court's factual determinations, to the extent there were any, are not entitled to deference.

{¶ 18} "Unconscionability includes both ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' " *Taylor at* ¶ 34, quoting *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993). (Other citations omitted.) As a result, "[t]he party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Id.*

{¶ 19} In *Taylor*, the court stressed that " 'an arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits.' " *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 41, quoting *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998). Thus, "[w]hen a party challenges an arbitration provision as unconscionable pursuant to R.C. 2711.01(A), the party must show that the arbitration clause itself is unconscionable. If the court determines that the arbitration clause is enforceable, claims of unconscionability that relate to the contract generally, rather than the arbitration clause specifically, are properly left to the arbitrator in the first instance." *Id.* at ¶ 42.

{¶ 20} "Procedural unconscionability considers the circumstances surrounding the

contracting parties' bargaining, such as the parties' ' "age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." ' " *Taylor* at ¶ 44, quoting *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993). (Other citation omitted.) " 'Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.' " (Bracketed material sic.) *Id.*, quoting 9 Restatement of the Law 2d, Contracts, Section 208, Comment d (1981).

{¶ 21} In response to W&A's motion, Gaither failed to present any evidence or information on the above matters, other than the fact that W&A had drafted the agreement. The complaint only indicates that Gaither initially spoke to a W&A representative after finding its information in a phonebook, and then signed a written contract on October 29, 2014.[1]

---

[1] Gaither's memorandum in the trial court discusses the fact that he did not have sophisticated knowledge and did not consult with legal counsel before signing the contract. However, none of these alleged facts are part of the record and they cannot be considered. In contrast, W&A asserted in the trial court that Gaither was a teacher, and, therefore, was able to read a contract. Again, these "facts" are not part of the record. If parties wish the trial court (and later an appellate court) to consider facts, they must submit evidence, not assertions in memoranda.

{¶ 22} In *Taylor,* the Supreme Court of Ohio stressed that "simply showing that a contract is preprinted and that the arbitration clause is a required term, without more, fails to demonstrate the unconscionability of the arbitration clause." *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 46. The clause involved in the case before us is contained in a contract of only three pages, is in standard, rather than fine print, and was not hidden in any way. Gaither failed to submit any evidence that he was hurried through the process or that he was prevented from consulting an attorney if he desired. This is similar to the situation in *Taylor*. *Id.*

{¶ 23} The arbitration clause is also not difficult to understand. Furthermore, although Gaither argues that arbitration clauses in consumer contracts are like adhesion contracts, the Supreme Court of Ohio has said that "even a contract of adhesion is not in all instances unconscionable per se." *Id.* at ¶ 50. In this regard, the court stressed that "few consumer contracts are negotiated one clause at a time," and that form contracts can be advantageous to consumers by reducing transaction costs. *Id.*, quoting *Carbajal v. H & R Block Tax Servs., Inc.,* 372 F.3d 903, 906 (7th Cir. 2004).

{¶ 24} In any event, Gaither failed to present any evidence in the trial court that he was precluded from negotiating any terms in the contract. There was simply no evidence before the trial court to indicate that the arbitration clause was procedurally unconscionable. Gaither was not precluded from presenting evidence in the trial court; he simply failed to do so. *See, e.g., Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 27 (commenting that "[a]s the party challenging the enforceability of the arbitration agreement, it was [the consumer's] burden to come forward with evidence supporting her challenge. She did not satisfy that burden. Indeed,

the paucity of any evidence in support of her claims is notable.")

{¶ 25} Because both procedural and substantive unconscionability must be shown, Gaither's argument fails on the lack of procedural unconscionability alone. *See, e.g., Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶ 18 (noting that a court does not need to review whether an arbitration provision is substantively unconscionable if it fails to find the provision procedurally unconscionable). Although we are not required to do so, we will additionally discuss whether the arbitration agreement was substantively unconscionable.

{¶ 26} "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." (Citations omitted.) *Hayes* at ¶ 33. "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Id.*, citing *John R. Davis Trust 8/12/05 v. Beggs*, 10th Dist. Franklin No. 08AP-432, 2008-Ohio-6311, ¶ 13. (Other citation omitted.) In *Hayes*, the court stressed that it had not adopted a "bright-line set of factors for determining substantive unconscionability," and that the factors being considered would vary with the particular agreement's content. *Id.*

{¶ 27} Gaither argues that the arbitration clause is substantively unconscionable because it would require him to travel to Virginia and incur substantially more cost than if the case were adjudicated in Ohio. He also contends that arbitration fees were not disclosed in the contract, but that the website of the McCammon Group indicates fees of $200 per hour. In addition, Gaither points to the existence of a "loser pays" provision in

the agreement, which allegedly has a chilling effect on claimants attempting to assert their rights under the CSPA.

{¶ 28} The trial court concluded that the facts about the cost of arbitration did not obviate the parties' clear agreement to arbitrate disputes. Moreover, the court said that it found "no compelling reason to strike the loser pays provision and require arbitration in Montgomery County, Ohio." Doc. #18, Decision, Order and Entry Sustaining Defendant's Motion to Dismiss, p. 5.

{¶ 29} As was noted, the agreement provided that if arbitration were invoked, the "substantially prevailing party" would be entitled to recover all costs, fees, and expenses, including reasonable attorney fees, for claims on which the party substantially prevailed.

{¶ 30} "If a contract or term in a contract is found to be unconscionable at the time that the contract was made, a court may choose either to refuse to enforce the contract, enforce the contract without the unconscionable portion, or limit the application of the unconscionable portion to avoid an unconscionable result." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 36, citing R.C. 1302.15(A). (Other citations omitted.)

{¶ 31} Regarding the fee for arbitration and the cost of travel, Gaither failed to submit the detailed type of information that the consumer provided, for example, in *Eagle.* In that case, the court found arbitration fees "prohibitive, unreasonable, and unfair as applied," because it was highly doubtful that the consumer, "a primary caregiver for one child and who more recently made approximately $20,000 per year, would be willing and able to expend on a conservative scale between $4,000 and $6,000 on arbitration fees and costs * * *." *Id.* at ¶ 50-51. The court of appeals, therefore, held the clause

substantively unconscionable.  *Id*. at ¶ 51.

{¶ **32**} Although Gaither contends that he is experiencing financial difficulty, he failed to provide the trial court with any detail about his particular situation, nor was any information provided about the arbitration costs, other than a potential hourly fee.  This is similar to what occurred in *Taylor*, where the Supreme Court of Ohio stated that:

> In light of the dearth of evidence before the trial court on the cost of mediation and arbitration and whether such costs would have been prohibitive to the [consumers], we need not, and therefore do not, decide as a matter of Ohio law whether or at what point arbitration costs can become prohibitive so as to render an arbitration agreement, or its provision allocating arbitration costs, to be substantively unconscionable.

*Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 60.

{¶ **33**} In *Taylor* the court also discussed whether paragraph seven of the parties' contract was substantively unconscionable because it required the consumers to pay the drafter's " 'reasonable legal costs' of enforcing its rights under the contract, including attorney fees, court costs, and fees and expenses."  *Id*. at ¶ 66.  The court declined to answer this question because paragraph seven was not part of the arbitration clause.  *Id*. at ¶ 67.

{¶ **34**} Nonetheless, the court noted that the contract did not limit the consumers' remedies, and if they prevailed in the arbitration, they could possibly be awarded their reasonable attorney fees under the CSPA.  *Id*.  The court further observed that paragraph seven could also be read to preclude payment of the drafter's reasonable legal costs if it did not prevail on its claims.  *Id*.

**{¶ 35}** In addition, the court commented that:

Ohio law in some circumstances permits contractual provisions requiring the losing party in litigation to pay the prevailing party's attorney fees. *See Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702, syllabus. At the least, paragraph seven of the contract may be read so as not to grant [the drafter] a right to have the [consumers] pay its attorney fees if [the drafter] does not prevail on its claims. In light of the uncertainty of paragraph seven's meaning, we cannot find that paragraph seven's provision for [the drafter's] attorney fees is so oppressive and one-sided as to "taint" the arbitration clause in paragraph 15 and render it unenforceable. Because the arbitration clause itself is enforceable, the question of the meaning of paragraph seven and its enforceability under Ohio law, like that of other contract terms, will be for the arbitrator in the first instance. *Cf., e.g., Hawkins v. Aid Assn. for Lutherans* (C.A.7, 2003), 338 F.3d 801, 807 (claim that arbitration clause was unconscionable because it limited remedies available to plaintiffs was for arbitrator in the first instance, as the adequacy of arbitration remedies "has nothing to do with whether the parties agreed to arbitrate").

*Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 68.

**{¶ 36}** In a subsequent decision, the Supreme Court of Ohio held that an optional arbitration agreement, which waived a nursing home resident's right to seek punitive damages and attorney fees, was not substantively unconscionable. *Hayes*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 5 and 14. In this regard, the court

concluded that "[t]he provisions in the agreement by which the parties waive their right to seek punitive damages and attorney fees are also commercially reasonable. Both parties must bear their own attorney fees and costs under the agreement, which is equitable to both parties. This provision is not one-sided or oppressive." *Id.* at ¶ 35.

{¶ 37} The court also found that a one-sided waiver of punitive damages alone did not make the arbitration provision commercially unreasonable. *Id.* at ¶ 36. In particular, the court stressed that the nursing home had waived some of its own statutory rights. These rights included: (1) the ability to seek court costs and attorney fees under R.C. 2323.42; (2) the right to pursue an action under R.C. 2323.51 and Civ.R. 11, based on the resident's filing of a groundless complaint; and (3) the right to seek dismissal of an action based on the resident's failure to file an affidavit of merit under Civ.R. 10(D)(2). *Id.* at ¶ 36-39.

{¶ 38} Neither *Taylor* nor *Hayes* involved the type of "loser pays" provision that exists in the case before us. Furthermore, the provision in question is contained within the arbitration agreement, not in a separate paragraph of the contract, and W&A does not give up any rights that it possesses.

{¶ 39} In a decision issued after both *Taylor* and *Hayes*, the Eighth District Court of Appeals considered, in an en banc proceeding, whether an arbitration clause containing a "loser pays" provision was procedurally and substantively unconscionable, or was against public policy. *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 11 (8th Dist.). The provision in *DeVito* stated that "[t]he non-prevailing party shall pay, and the arbitrators shall award the prevailing party's arbitration costs and expenses, including reasonable attorney's fees." (Emphasis omitted.) *Id.* at ¶ 9.

{¶ 40} Three members of the en banc court agreed that this provision was both unconscionable and against public policy. *Id.* at ¶ 44. However, these members also agreed that if the offending provision were excised, the non-offending portions of the arbitration agreement would be enforceable, and the trial court's order staying the proceedings would be affirmed. *Id.* at ¶ 44-45.

{¶ 41} Two judges concurred in the judgment only; one of these judges did not express his views, and the other concurred in the dissenting opinion of Judge Kilbane. *Id.* at ¶ 45.

{¶ 42} Two other members of the court agreed that the "loser pays" provision was against public policy, and that the arbitration agreement was enforceable if the offending provision were removed. However, these judges did not agree that the loser pays provision was unconscionable. *DeVito*, 2015-Ohio-3336, 37 N.E.3d 194, at ¶ 46-67 (Boyle, J., concurring in judgment only and dissenting in part).

{¶ 43} And finally, four members of the court, plus one judge who had concurred in the judgment only, concluded that "the entire arbitration clause is unconscionable and, therefore, unenforceable." *Id.* at ¶ 68 (Kilbane, J., dissenting). The dissent also concluded that the arbitration clause violated public policy. *Id.* at ¶ 78-79. As a result, a majority of the en banc court concluded that the "loser pays" provision was unconscionable, but a majority of the court also held that if the provision were removed, the arbitration agreement would still be enforceable. Almost all members of the en banc court concluded that the "loser pays" provision was against public policy, with a minority holding that this made the entire arbitration agreement unenforceable.

{¶ 44} Previously, a panel of the Eighth District had held that such a provision in

an arbitration agreement violated public policy to the extent it required an arbitrator to award the prevailing party reasonable attorney fees even where a consumer did not file the action in bad faith. *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 48 (8th Dist.). In this regard, the panel observed that "[t]he CSPA reflects a strong public policy that consumers who bring good faith claims against suppliers will not have to pay the supplier's attorney fees under R.C. 1345.09(F), even if the consumer loses his or claim [sic] against the supplier. [The drafter's] loser-pays provision effectively nullifies this statutory protection provided to consumers by the CSPA." *Id.*

**{¶ 45}** Other courts in Ohio have held that a "loser pays" provision is substantively unconscionable. In *Fortune v. Castle Nursing Homes, Inc.*, 164 Ohio App.3d 689, 2005-Ohio-6195, 843 N.E.2d 1216 (5th Dist.), the court held an arbitration provision substantively unconscionable based on "the fact that it contains a 'loser pays' provision, that a resident or representative of the resident is required to sign the admission agreement containing the arbitration provision for admission into the facility, and that the format of the document and the language used is such that a person executing the document is not placed on notice of the existence of the clause or the ramifications of agreeing to such a clause." *Id.* at ¶ 34. Despite this fact, the court reversed the trial court's finding of unconscionability, because the plaintiff failed to also establish that the arbitration provision was procedurally unconscionable. *Id.* at ¶ 37.

**{¶ 46}** In contrast, courts have found arbitration payment provisions enforceable where the agreement more fairly allocates costs. *See, e.g., Manley v. Personacare*, 11th Dist. Lake No. 2005-L-174, 2007-Ohio-343, ¶ 40-41, and *Harrison v. Winchester Place Nursing*, 2013-Ohio-3163, 996 N.E.2d 1001, ¶ 36 (10th Dist.). In both *Manley* and

*Harrison*, the arbitration clause provided that each party would be responsible for its own attorney fees, and that the drafter of the agreement would be responsible for paying the entire cost of a mediation process and the first five days of arbitration costs. *Id.*

**{¶ 47}** As was noted, "[t]he party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 34. Because we have already concluded that the arbitration clause is not procedurally unconscionable, Gaither's assignment of error cannot be sustained on this basis. However, Gaither also contended in the trial court that the arbitration agreement was against public policy, and that this is another basis for refusing to enforce the contract. The trial court did not specifically address the public policy arguments, although the court did note Gaither's position that the contract was unenforceable based on unconscionability as well as public policy. Doc. #18, Decision, Order and Entry Sustaining Defendant's Motion to Dismiss, p. 4.

**{¶ 48}** The principle is well established that "contracts which bring about results which the law seeks to prevent are unenforceable as against public policy." (Citations omitted.) *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, 974 N.E.2d 78, ¶ 17. "This rule stems from the ' * * * legal principle which declares that no one can lawfully do that which has the tendency to be injurious to the public welfare.' " *King v. Cashland, Inc.*, 2d Dist. Montgomery No. 18208, 2000 WL 1232768, *2 (Sept. 1, 2000), quoting *Garretson v. S.D. Myers, Inc.*, 72 Ohio App.3d 785, 788, 596 N.E.2d 512 (9th Dist.1991).

**{¶ 49}** As an example of how this doctrine is applied, we held in *King* that

construing a waiver of privacy claims in a loan agreement so as to permit a debt collector "to pursue, with impunity, unlimited abusive and harassing methods of debt collection is repugnant to public policy, and therefore unenforceable." *Id.* at *3. Another example occurred in *Med Controls, Inc. v. Hopkins*, 61 Ohio App.3d 497, 573 N.E.2d 154 (8th Dist.1989), where the court held that a contract allowing a collection agency to engage in the unauthorized practice of law when collecting on accounts was unenforceable because it violated public policy. *Id.* at 499. We also refused to enforce, on public policy grounds, a contractual provision requiring a client to pay for services that an attorney could not perform once the client had exercised its right to terminate the contract with the attorney. *Moraine v. Lewis*, 151 Ohio App.3d 526, 2003-Ohio-460, 784 N.E.2d 774, ¶ 32 (2d Dist.)

**{¶ 50}** In the trial court and on appeal, Gaither cited the *DeVito* case in support of its contention that the "loser pays" provision is against public policy. As was noted, a majority of the en banc court held in *DeVito* that such a provision was unenforceable because it was against public policy. However, a majority also refused to invalidate the arbitration agreement on this ground. Instead, the majority excised the provision. *DeVito*, 2015-Ohio-3336, 37 N.E.3d 194, at ¶ 36-46.

**{¶ 51}** We agree with *DeVito* that the provision requiring the payment of costs and fees by the substantially prevailing party is against public policy. Notably, the "loser pays" provision involved in *DeVito* is quite similar to the one before us. Both clauses require a losing party to pay costs, including attorney fees, of the prevailing party. As the en banc court observed, this form of the "loser pays" provision "attempts to modify or rewrite the rule for attorney fees" under the CSPA, which allows a prevailing party to be

awarded attorney fees only where a consumer's action is groundless or in bad faith, or where a supplier knowingly commits an act or practice that violates the CSPA. *DeVito*, 2015-Ohio-3336, 37 N.E.3d 194, at ¶ 38.

**{¶ 52}** As the Supreme Court of Ohio has stressed, "[t]he CSPA 'is a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to R.C. 1.11.' " *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 11, quoting *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990). "One of its purposes is to make 'private enforcement of the CSPA attractive to consumers who otherwise might not be able to afford or justify the cost of prosecuting an alleged CSPA violation, which, in turn, works to discourage CSPA violations in the first place via the threat of liability for damages and attorney fees.' " *Id.*, quoting *Parker v. I&F Insulation Co., Inc.*, 89 Ohio St.3d 261, 268, 730 N.E.2d 972 (2000).

**{¶ 53}** In light of the strong policy for arbitration expressed in *Taylor* and *Hayes*, the best approach is to excise the offending provision but still allow enforcement of the agreement to arbitrate. This is consistent with the majority decision in *DeVito*, and with the principle that an offending provision in an agreement may be severed if it "does not fundamentally alter the otherwise valid and enforceable provisions of the agreement." *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 20. In *Ignazio*, the court relied on the fact that the agreement had an express severance clause, and on "Ohio's strong public policy in favor of arbitration of disputes." *Id.*

**{¶ 54}** Although W&A's contract lacks an express severance clause, the rest of the

arbitration agreement does not depend on the "loser pays" provision, and severance would have no effect on the remaining provisions. Furthermore, as was noted, Ohio does have a robust policy favoring arbitration. *See, e.g.*, *Ignazio* at ¶ 18, and *Hayes*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 15 (both indicating that all doubts should be resolved in favor of arbitration, given Ohio's strong public policy in favor of arbitration).

{¶ 55} We also distinguish the cases cited by W&A. Although we rejected unconscionability of an agreement for attorney fees in *Lindsey v. Sinclair Broadcast Group, Inc.*, 2d Dist. Montgomery No. 19903, 2003-Ohio-6898, we did not consider public policy. In addition, *Lindsey* involved an employment agreement, not the CSPA. *Id.* at ¶ 4-5. Likewise, public policy was not raised or considered in *Peltz v. Moyer*, 7th Dist. Belmont No. 06 BE 11, 2007-Ohio-4998. *Peltz* also involved investors, and the court rejected the application of cases in which the CSPA had been involved, stating "[u]nlike a form contract between a purchaser of a car or a home repair solicitation, the contract in the instant case involved Appellees' investment of certain savings. Appellees, as investors of money, are in a much different position than a consumer purchasing a vehicle or one who is solicited in her home." *Id.* at ¶ 68.

{¶ 56} In addition, we reject Gaither's argument that if the arbitration provision is deemed enforceable, the arbitration should take place in Ohio. The contract clearly provides otherwise, and Gaither had the ability to read it. *See, e.g., W.K. v. Farrell*, 167 Ohio App.3d 14, 2006-Ohio-2676, 853 N.E.2d 728, ¶ 59 (rejecting party's arguments because she failed to read the contract.)

{¶ 57} As was noted earlier, the trial court should not have dismissed the case for

lack of jurisdiction. The provision in the contract indicating that jurisdiction would vest exclusively in Virginia courts is a forum selection or venue provision, not a matter involving the court's subject matter jurisdiction.

**{¶ 58}** "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." (Citation omitted.) *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19.

**{¶ 59}** "Ohio's common pleas courts are endowed with 'original jurisdiction over all justiciable matters * * * as may be provided by law.' " *Id.* at ¶ 20, quoting Article IV, Section 4(B), Ohio Constitution. "Jurisdiction has been 'provided by law' in R.C. 2305.01, which states that courts of common pleas have 'original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts.' " *Id.* In *Kuchta*, the court stressed that it had "long held that the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.' " *Id.*, quoting *Saxton v. Seiberling*, 48 Ohio St. 554, 558–559, 29 N.E. 179 (1891).

**{¶ 60}** "A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Kuchta* at ¶ 19, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12. "This latter jurisdictional category involves consideration of the rights of the parties." *Id.* For example, standing is not a subject-matter jurisdiction issue; it relates to whether a party has a personal stake in the outcome sufficient to establish standing, and a lack of

standing may require a court to dismiss an action. *Id.* at ¶ 22-23. Similarly, a lack of personal jurisdiction precludes a court in a particular jurisdiction from proceeding with a matter, even though the court otherwise has jurisdiction. *Kuchta at* ¶ 18; *Pratts* at ¶ 11; *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 11-19.

**{¶ 61}** The Supreme Court of Ohio has indicated that "the requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 66 Ohio St.3d 173, 175, 610 N.E.2d 987 (1993), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Courts in Virginia have also described forum selection clauses as "venue selection" clauses. *Commw. v. Keel*, 29 Va. Cir. 276, 1992 WL 885003, *2 (Va.Cir.Ct.1992).

**{¶ 62}** In deciding the validity of a particular forum selection clause, Ohio courts consider three factors: (1) whether the contract is between commercial entities; (2) whether the contract is the product of fraud or overreaching; and (3) whether enforcement is otherwise unreasonable or unjust. *Info. Leasing Corp. v. Jaskot*, 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192, ¶ 13-18 (1st Dist.).

**{¶ 63}** Virginia has adopted a similar standard, holding that "contractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power." *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342, 397 S.E.2d 804 (1990). It is not clear that Virginia courts would enforce W&A's

forum selection clause. Most of the cases citing *Paul Business Systems* involve commercial entities. In one case that involved a consumer, the court did uphold a "venue selection" clause requiring the action to be litigated in one Virginia district (selected by the Commonwealth), rather than the Virginia district to which the defendant had obtained transfer of the action. *Keel*, 29 Va. Cir. 276, 1992 WL 885003, at *2. *Keel* was a student loan default case brought by the Commonwealth of Virginia. *Id.* at *1. Notably, in *Keel*, the defendant did not challenge the reasonableness of the clause; he only contended that the selected forum was inconvenient. *Id.*

{¶ 64} At such time as arbitration proceedings conclude, and if application for confirmation of any arbitration award is made, the trial court can decide issues pertaining to forum selection and choice of law, and whether those provisions should be enforced. *Banks*, 184 Ohio App.3d 269, 2009-Ohio-5035, 920 N.E.2d 432, at ¶ 10.

{¶ 65} Based on the preceding discussion, Gaither's sole assignment of error is overruled in part and is sustained insofar as the trial court erred in dismissing the case for lack of jurisdiction rather than staying the matter pending arbitration. Accordingly, the trial court's decision must be reversed, and this cause must be remanded for further proceedings. On remand, the court will enter an order staying the proceedings pending arbitration, with the provision that the clause pertaining to payment of costs to the substantially prevailing party is excised from the agreement.


III.  Conclusion

{¶ 66} Gaither's sole assignment of error having been overruled in part and sustained in part, the judgment of the trial court is reversed, and this cause is remanded

for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

HALL, P.J., concurs.

FROELICH, J., concurring in part and dissenting in part:

{¶ 67} The Complaint alleges violations of Ohio's Consumer Sales Practices Act, Ohio's Debt Adjustment Companies Act, and fraud. It seeks damages, injunctive relief, and attorney fees. The Complaint alleges in both a conclusory and factual manner that the Montgomery County, Ohio, Common Pleas Court has jurisdiction over the subjects of the complaint. The Answer states generally that the court lacks subject matter jurisdiction (second defense) and specifically that it lacks jurisdiction because "the plaintiff agreed to be bound by a forum selection clause" requiring litigation in Virginia (third defense). The Appellee's motion to dismiss (or to stay pending arbitration) was based on these defenses.

{¶ 68} The trial court decision correctly cited *Banks* to the effect that the arbitration provision must be addressed first; then the court found the provision to be enforceable and "dismissed [the case] without prejudice for want of jurisdiction over this matter."

{¶ 69} I concur with the majority that the case should have been stayed, rather than dismissed, but disagree concerning the holding *at this time* that the "loser pays" provision should be held unenforceable.

{¶ 70} *On this record,* there is nothing unconscionable, against public policy, or violative of due process in having the arbitration provision in this contract between plaintiff and defendant; therefore, this case should be stayed pending the outcome of the arbitration. Then, pursuant to Ohio law and the terms of the contract, either party may

seek to have the decision of the arbitrator entered as a judgment *in this case* or apply to the trial court *in this case* for an order of enforcement or confirmation.    At that time, the trial court may address "loser pays," forum selection, choice of law, and any other aspects of the arbitrator's decision.

. . . . . . . . . .

Copies mailed to:

Jeremiah E. Heck
Katherine L. Wolfe
Barry F. Fagel
Hon. Mary Katherine Huffman